115 A.2d 482 (1955)
Samuel Hallock DU PONT and Eve duPont Remer, Plaintiffs,
v.
EQUITABLE SECURITY TRUST COMPANY, a corporation of the State of Delaware, Trustee under a Trust Agreement, dated August 26, 1929, Defendant,
John H. Remer, Jr., and Elizabeth Wrenn Remer, Additional Defendants on Cross Complaint.
Court of Chancery of Delaware, New Castle.
January 4, 1955.
On Motion for Judgment on Pleadings and on Motion for Leave to Amend March 17, 1955.
On Cross Motions for Summary Judgment July 25, 1955.
*483 William S. Potter and James L. Latchum (of Berl, Potter & Anderson), Wilmington, for both plaintiffs, and H. Ober Hess (of Ballard, Spahr, Andrews & Ingersoll), Philadelphia, Pa., for plaintiff Eve duPont Remer.
Caleb S. Layton (of Richards, Layton & Finger), Wilmington, for defendant, Equitable Security Trust Co.
Howard Duane, Wilmington, guardian ad litem for the additional defendants, John H. Remer, Jr., and Elizabeth Wrenn Remer.
SEITZ, Chancellor.
This is an action by plaintiffs seeking to terminate a trust on the ground that they are the only parties in interest. Their action is resisted by the trustee and the guardian for the minor defendants on the ground that under a reasonable construction of the inter vivos trust agreement there is an implied remainder existing in favor of the members of a class whose members are not yet determinable but of which the minor defendants are possible members. The case is before the Court on plaintiffs' motion for judgment on the pleadings pursuant to Chancery Court Rule 12(c), Del.C.Ann.
The basic facts are not in issue. On August 26, 1929, an inter vivos trust agreement was entered into between plaintiff, Samuel Hallock duPont (hereafter called "Hallock" or the "settlor") and Equitable Security Trust Company[1], as trustee. The settlor was then in his late twenties and was, inferentially, a man of substantial means. The agreement provided for the support and maintenance of Hallock's then wife, Elizabeth, and two year old daughter, Eve, in the event his wife was granted an absolute divorce. The agreement recited that the settlor and his wife had separated and that she had taken their only daughter, Eve, and was about to establish a permanent residence in Nevada for the purpose of obtaining an absolute divorce. It further recited that the settlor preferred to make an amicable provision for the support and maintenance of his wife and of his daughter in case his wife should be successful in her divorce action, rather than permit the matter to become the subject of litigation. It also recited that the provision made was satisfactory to the settlor and his wife. In fact, Elizabeth's written consent is attached to the trust agreement.
By the terms of the agreement the settlor was to deliver 12,000 shares of duPont Company common stock to the trustee. The trustee was to retain the stock in the settlor's *484 name with a provision that if within one year from the date Elizabeth obtained a final divorce decree then the trustee was to transfer the stock to its name as trustee and to hold it in trust for the purposes set forth in the agreement. The agreement provided that if Elizabeth failed to obtain her divorce then the trustee was to redeliver the stock to the settlor, his executors, administrators, or assigns.
Elizabeth obtained her absolute divorce from the settlor on December 9, 1929, and thereafter the stock was transferred into the name of the trustee and has been so held up until the present time. The corpus is now 48,000 shares of duPont common by virtue of stock splits. The income from the trust has been paid in accordance with the terms of the instrument.
On February 18, 1936, Elizabeth married Leonard Govett and continued as his wife until her death on November 29, 1942.
The settlor and his daughter Eve are the sole plaintiffs in this action. Eve is now a married woman and the minor defendants are her children.
On April 5, 1954, the settlor and Eve notified the trustee that, since they were the only persons who had an interest in the trust property under the agreement of August 26, 1929, they had revoked the trust. They directed the trustee to deliver the trust corpus to them in certain stipulated proportions. As indicated, the trustee refused to recognize plaintiffs' right to revoke and this action followed. Because of their possible interest, Eve's minor children were made additional defendants on cross complaint and the Court appointed an independent guardian to represent them in this action. The guardian has also taken the position that plaintiffs may not terminate the trust.
Generally speaking, under Delaware law, the sole parties in interest may terminate a trust. But the trustee argues that a termination of this trust would be contrary to the settlor's intention. The trustee says that Claflin v. Claflin, 149 Mass. 19, 20 N.E. 454, 3 L.R.A. 370, is accepted in this state and requires that a settlor's intention be given effect. And, says the trustee, that intention as here expressed was to create a trust for the benefit of the settlor's wife and his daughter and her possible issue. I need not pass upon the applicability of the Claflin rule in Delaware because the ascertainment of the settlor's intention with respect to Eve's issue is the very matter to be decided here. No spend-thrift provision is involved.
The sole question for decision, therefore, is whether under the provisions of the trust agreement, Hallock and Eve are the only persons who have an "interest" in the trust property. To resolve this question it is necessary to indulge in a rather laborious analysis of a prolix trust instrument.
The instrument contains many important provisions which are not easily identified by reference because the instrument does not have many identifying symbols. For convenience, therefore, all parties have agreed to give certain provisions paragraph letters. However, it should be understood that what are hereinafter called paragraphs A, B and C are in fact in one paragraph. The same is true of paragraphs D, E and F, while paragraphs G and H are in yet another single paragraph.
Paragraph A provides for a $4,000 monthly payment from income to Elizabeth for the support of herself and Eve until Eve shall arrive at age twenty-one or until Elizabeth remarries.
Paragraph B provides that after Eve reaches twenty-one years of age the trustee shall pay out of income the sum of $3,000 per month to Elizabeth for her support and maintenance during her life or until her remarriage and pay the sum of $1,000 per month to Eve during her life or to her lawful issue until the death of Elizabeth if Eve should predecease her mother leaving lawful issue surviving her.
Paragraph C provides that the income in excess of $48,000 per year shall be paid to the settlor or in case of his death to Eve during her life or if she should die before Elizabeth, leaving lawful issue, then it shall *485 be paid to such issue equally until the death of Elizabeth. In default of issue it was to be paid until Elizabeth's death, to such persons as were entitled to the residue of the settlor's estate under his will or in default of a will to such persons as would be his next of kin under the Delaware law.
Paragraph D provides that if Elizabeth shall not remarry and thus continue to receive the stipulated income during her life, then at her death the $48,000 yearly income was to be paid as follows: $12,000 to Eve for life and $36,000 to the settlor, if living, and if not living or upon his death the whole $48,000 was to be paid in equal monthly installments to Eve for her life and upon her death the entire corpus of the trust was thereupon to be paid over outright by the trustee to Eve's lawful issue.
Paragraph E provides that if Eve shall predecease her mother leaving lawful issue surviving her mother and her mother shall not have remarried, then the part of the income that Eve was entitled to receive at the time of her death shall be paid in equal shares to such issue until the death of Elizabeth, and upon the death of Elizabeth the entire trust corpus shall be transferred outright in equal shares to the lawful issue of Eve.
Paragraph F provides that if Elizabeth shall not remarry and Eve shall have predeceased her without leaving lawful issue surviving Elizabeth, or if Eve shall die after her mother, her mother not having remarried, without leaving lawful issue surviving, then in either such event the entire corpus of the trust estate was to be paid over outright to the settlor if living. If he was then deceased, it was to be paid to his lawful issue in equal shares, but if there was not lawful issue then surviving it was to be paid over to such persons as were then the next of kin of the settlor under Delaware law.
The parties concede that as to paragraph A through F either they are no longer operative or never became operative because of the factual developments in the case. Of course, to the extent that they throw any light on the construction question they are still pertinent. It may be noted that paragraphs A, B, and C deal only with the disposition of income. Paragraphs D and E deal with the dispostion of the income and the corpus in the event Elizabeth did not remarry, while paragraph F deals solely with the disposition of corpus in the same situation. Since Elizabeth did remarry those provisions were inoperative thereafter. However, it should be noted that under paragraphs D and E, Eve's issue was to take the corpus.
All parties agree that the case turns on the language of so-called paragraph H and that the other portions of the agreement are only pertinent in aid of the proper construction of that paragraph. However, paragraphs now identified as G and H are one paragraph in the instrument and because of their importance I quote them in full:
[G] "If the said Elizabeth Ormond Wrenn duPont should, after she shall have been divorced as aforesaid and the trust for her benefit herein provided shall have become effective, remarry, then and in that event the said Trustee shall pay unto the said Elizabeth Ormond Wrenn duPont, after such remarriage, the sum of Twelve Thousand Dollars ($12,000.00) per year, in equal monthly portions, for and during the remainder of her life, and shall pay to or for the benefit of the said Eve duPont, daughter of the said Settlor, the further sum of Twelve Thousand Dollars ($12,000.00) per year, in equal monthly portions, for and during the term of her life, and shall pay all of said net income not required for the purpose of making said last mentioned payments to said Elizabeth Ormond Wrenn duPont and said Eve duPont unto the said Samuel Hallock duPont during his life and upon his death unto the said Eve duPont for her life and in case of or upon her death to her lawful issue equally until the death of the said Elizabeth *486 Ormond Wrenn duPont, and in default of such issue, the Trustee shall pay such excess of net income, until the death of the said Elizabeth Ormond Wrenn duPont, unto such persons as may be entitled to the residue of the estate of the said Settlor, under his last will and testament, or, in default of such last will and testament, to such persons as shall be the next of kin of the said Settlor under the law of the State of Delaware. [H] Upon the death of the said Eve duPont leaving lawful issue her surviving and being survived by her said mother, the said Trustee shall distribute the net income of the trust estate in the following manner, to wit,  $12,000, part thereof, shall be paid annually to the said Elizabeth Ormond Wrenn duPont for life, as aforesaid, $12,000, other part thereof, shall be paid annually to and among such lawful issue of said Eve duPont, in equal shares, until the death of said Elizabeth Ormond Wrenn duPont, and the remainder shall be paid, until the death of said Elizabeth Ormond Wrenn duPont, unto the said Settlor, if he be living, and if he be deceased, or upon his decease, such remainder shall also be paid annually to and among such lawful issue of said Eve duPont, in equal shares; and, upon the death of said Elizabeth Ormond Wrenn duPont, if there be lawful issue of the said Eve duPont then surviving, the said Trustee shall assign, transfer, pay over and deliver the entire corpus of the trust estate unto such issue, in equal shares, per stirpes and not per capita, free and discharged from any and all trusts whatsoever; but if there be no such lawful issue then surviving, or if the said Eve duPont, having survived her mother, should die without leaving lawful issue her surviving, then and in either such event, the said Trustee shall assign, transfer, pay over and deliver the entire corpus of the trust estate, free and discharged from any and all trusts whatsoever, unto such persons as are entitled to the residue of the estate of the said Settlor under his last will and testament, or, in default of such last will and testament, unto such persons as may be the next of kin of the said Settlor under the law of the State of Delaware." [Emphasis supplied.]
There is no question but that plaintiffs now have the exclusive interest in the trust income and so we are concerned solely with the identity of those having an interest in the corpus.
It will be noted that the language relied upon by plaintiffs here as giving the settlor the right to terminate insofar as "interest" in the corpus is concerned does not refer to him. Therefore, to avoid possible future confusion, the Court must note a point which is not being decided because it was not advanced or argued. A settlor might well be the "sole beneficiary" of the corpus of a trust in the sense that the Court would say that he alone had the entire interest therein. But it might not follow that in seeking to terminate such a trust he would be doing so under the provisions of the trust. Indeed, the Court sometimes permits it to be done contrary to explicit language in the trust instrument. See Weymouth v. Delaware Trust Co., 29 Del.Ch. 1, 45 A.2d 427.
Plaintiffs say that by the underscored language of paragraph H the settlor provided an independent event under which the corpus would pass to the settlor's residuary legatees or next of kin. They say that when Elizabeth died at a time when Eve had no issue the event came to pass which rendered operative the language governing the ultimate disposition of the corpus under the instrument. Defendants say the language is inapplicable because it refers to a situation which did not happen  where Eve predeceased her mother.
Defendants next argue that a remainder in favor of the issue of Eve who survive her must be implied because of the language "or if the said Eve duPont having survived her mother, should die without leaving lawful issue her surviving". Plaintiffs say that no remainder should be implied here.
*487 I consider plaintiffs' first contention. Plaintiffs bottom their case under this point on the argument that the language "but if there be no such lawful issue then surviving" is to be considered independently of the preceding language in this same paragraph (H) except to identify the "issue" and the survivancy date involved. If plaintiffs are right, then I agree that they would be the only parties in interest under those circumstances. But is the language just quoted to be construed as plaintiffs contend? I think not and the reasons for my conclusion require a reconsideration of all of the preceding language in the paragraphs (G and H).
Paragraph G provides that if Elizabeth remarried, then she and Eve were each thereafter to be paid $12,000 per year for the rest of their lives respectively. All income not required for such purposes was to be paid to the settlor during his life and in case of or upon his death unto Eve duPont for her life and upon her death to her lawful issue equally until the death of Elizabeth. If Eve died without such issue then the excess income, until the death of Elizabeth, was to be paid to the persons who were entitled to the residue of the settlor's estate under his will or in default of such a will to his next of kin under the Delaware law.
The paragraph designated as "H" first provides for the disposition of income commencing with and in the event Eve predeceased Elizabeth leaving lawful issue surviving her (Eve). It next deals with the disposition of the income from that time until Elizabeth's death, at which time it provides for the disposition of the corpus to Eve's issue if they survive Elizabeth. It goes on then to the clause relied upon by plaintiffs, "but if there be no such lawful issue then surviving". The quoted language when read with all the language preceding it in the same sentence and paragraph is clearly qualified by and refers to the situation embraced by all that language, viz., Eve's predeceasing Elizabeth leaving lawful issue surviving her (Eve), and then such lawful issue predeceasing Elizabeth.
The language of paragraph H above, as well as a reading of paragraphs G and H together, makes it apparent that a primary condition to the operation of the language relied upon by plaintiffs was that Eve should have predeceased Elizabeth. I cannot agree with plaintiffs' argument that the condition in H that Elizabeth survive Eve applies only to income (language down to first semi-colon). The interrelationship of the language is apparent from a full reading of the paragraph. Plaintiffs' construction fails to pass the test of reason in construing the instrument. Moreover, the frivolous nature of the intent that such a construction would ascribe to the settlor does not commend it to the Court.
Nor does the Court's construction bring about an unusual result. When we adopt this construction of the language of the paragraph down to and including the language relied upon by plaintiffs, we find that the settlor provided for the disposition of the corpus in two distinct but interrelated situations:
1. Where Eve predeceased Elizabeth leaving lawful issue who survived Elizabeth.
2. Where Eve predeceased Elizabeth leaving lawful issue who did not survive Elizabeth.
In the first case, quite naturally, the corpus went to Eve's issue while in the second case, quite naturally, the corpus went to the settlor's residuary legatees or next of kin.
To summarize, the language relied upon by plaintiffs as setting forth a so-called mutually exclusive alternate basis governing the disposition of the trust corpus must be read in connection with all of the preceding language in the same sentence. When this is done, it appears that by the use of the quoted language the parties to the instrument expressed an intention to embrace a situation which never came into being, namely, the situation where Eve predeceased Elizabeth. I therefore conclude that the quoted language of the instrument does not have the effect *488 under the existing facts of vesting Hallock with the sole possible interest in the corpus.
I next consider defendants' contention that the language "or if the said Eve duPont, having survived her mother, should die without leaving lawful issue her surviving," creates a remainder by implication in the lawful issue of Eve, if any there be at her death. Plaintiffs, while conceding that implied remainders are recognized under Delaware law, contend that the circumstances of this case do not warrant such a conclusion here. Plaintiffs argue that the instrument fails to provide for the disposition of the corpus under the circumstances which have here developed, and so it belongs to the settlor.
It is apparent that paragraph H of the instrument does not explicitly state what happens to the corpus in the event Eve, having survived her mother, should die leaving lawful issue.
In seeking intention here, weight must be attached to the consequence, implicit in the instrument itself, of failing to imply a remainder. The settlor provided that either one of two conditions must have occurred before the corpus passed to his residuary legatees or next of kin under the provisions of paragraph H. The first condition required the death of Eve prior to Elizabeth leaving lawful issue surviving her (Eve) but predeceasing Elizabeth (the point decided above). The second condition required the death of Eve after Elizabeth without leaving lawful issue surviving her (Eve). Now it is apparent that the first alternate condition can never come to pass because Eve survived Elizabeth. We cannot know yet whether the second alternate condition will ever come to pass because, while Eve has survived her mother, we cannot know until Eve's death whether she will leave issue surviving her. All we know now is that she has lawful issue at this time. Thus it is not now possible to say that the provisions at the end of paragraph H governing the disposition of the corpus will ever become operative.
Under the foregoing analysis it is apparent that unless a remainder by implication is to be found, then we must conclude that the settlor failed or decided not to include a provision in the instrument for the disposition of the corpus in the event Eve should die after Elizabeth leaving lawful issue surviving. The inclusion of the language of the second condition becomes ridiculous in the absence of a finding of a remainder by implication.
It should be noted there was no apparent disposition on the settlor's part to preclude Eve's lawful issue from taking the corpus. Thus, in this paragraph as construed, as well as in other paragraphs which did not become operative because of factual developments, it was provided that her lawful issue should take the corpus.
It is unnecessary to dwell on the capricious intention which must be ascribed to the settlor if a remainder is not implied. It is also apparent from the then value of the corpus of the trust that the settlor was a man of substantial means and there is no basis for believing that because of his marital difficulties he desired to "penalize" his own child's issue.
I therefore conclude that unless the law prohibits it, the language of the instrument and the surrounding circumstances fairly require the Court to imply a remainder in favor of the issue of Eve, if any, who may survive her. What of the law? In Delaware there is no authority precisely in point. The Chancellor's opinion as a member of the old Court of Errors and Appeals in Rickards v. Gray, 6 Houst. 232, recognizes the doctrine of implied remainders. The existence of the doctrine is also recognized negatively in Brown v. Hodgson, 1 Del.Cas. 380; compare Equitable Trust Co. v. Johnson, 28 Del.Ch. 45, 36 A.2d 257.
The modern majority American rule supports the right of the Court to imply a remainder under the language here involved. As the author says in 22 A.L.R.2d 177, 186:
"In the majority of jurisdictions of this country wherein the problem has arisen, if there is a devise or bequest to A for life, whether expressly so *489 limited or otherwise, followed by a provision over in the event of A's dying without leaving `issue,' `children,' or other designated persons him surviving, and (other than, perhaps, a somewhat inapplicable general residuary provision) there is no express disposition made of the property in the event that A in fact leaves issue, children, or other persons designated, a gift by implication will ordinarily arise in those persons if they survive A, and especially is this true where other features of the instrument give support to the implication. * * *"
Some of the considerations for and against the application of the doctrine may be found in 2 Simes Future Interests § 434.
Indeed, under the rule of the Restatement of Property the words of the so-called "or" clause of the instrument alone would be sufficient to justify a remainder by implication here. See 3 Restatement of Property § 272. But I need not adopt that view here because, as above noted, there are additional facts and circumstances which reasonably call for the same result.
Plaintiffs say that a remainder should not be implied. They cite Equitable Trust Co. v. Johnson, above, wherein the Chancellor stated that [28 Del.Ch. 45, 36 A.2d 259] "Bequests by implication are not favored [citing text], and can only be sustained when the provisions of the will make it necessary." That case involved the question as to whether a bequest after the death of another gave the latter a life estate. The short answer is that the problem there presented was vastly different as the statement of the situation shows. Moreover, the Chancellor there cited Vol. 1 Restatement of Property § 116 in support of his position. This same Restatement, as noted above, flatly supports the raising of a remainder by implication in the present type of case. Since we must assume that these paragraphs of the Restatement are not inconsistent, it is reasonable to infer that the Chancellor was not dealing with the situation involved here.
Plaintiffs also cite several English cases for the proposition that the English Courts have rejected the entire notion of gifts by implication. Assuming this to be so, I do not subscribe to their approach. It is difficult for this Court to see how apparent intention could be better effectuated here than by applying the doctrine of implied remainders.
Plaintiffs also cite certain American cases for the proposition that remainders by implication will not be found. Without pausing to indicate the manner in which some of these cases are factually distinguishable, the answer must be that this Court prefers to adopt the majority American view for the reasons heretofore stated. While certain language of the instrument (admittedly inoperative here) does spell out the disposition of the corpus in certain situations, I cannot bring myself to conclude that this fact overcomes the various weighty considerations here tending to support an intention to create a remainder by implication.
Plaintiffs say that the cases relied upon by defendants are distinguishable because they involve wills rather than inter vivos trust agreements and are therefore based on principles and canons of construction which have no relevancy to the construction of inter vivos instruments. Conceding that many such principles and canons are inapplicable here, I do not believe that it follows that the basic reason behind the doctrine of implied remainders is inapplicable to this type of instrument. The doctrine is a rule of construction in aid of effectuating intent. This we here seek to ascertain from an instrument which for all practical purposes was to constitute a complete discharge of the settlor's obligation to his then wife and daughter. In view of the substantial value of the corpus, it is apparent that it was treated by the settlor as something more than a casual transaction. By its terms the instrument dealt with the disposition of income and corpus in relation to his then wife, baby daughter, and possible issue of that daughter. It thus possessed testamentary overtones. There is therefore no reason to construe *490 the instrument in a manner more favorable to the settlor than to his own child's possible surviving issue.
I therefore conclude that under a reasonable construction of the inter vivos agreement this Court may properly imply that the settlor intended that in the event Eve survived her mother, the corpus was to vest in Eve's surviving issue. From this conclusion it follows that plaintiffs are not now the only parties having a possible interest under the agreement and they are thus not entitled to terminate the trust. Plaintiffs' motion for judgment on the pleadings will be denied.
Order on notice.

On Motion for Judgment on Pleadings and On Motion for Leave to Amend.
After the filing of the Court's opinion of January 4, 1955, wherein it was decided that an order would be entered denying plaintiffs' motion for judgment on the pleadings, plaintiffs presented a proposed form of order denying the motion. At the same time they presented a motion for leave to amend under the general amendment rule. By their proposed amendment they alleged what they considered to be another surrounding circumstance to be considered by the Court in arriving at the proper construction of the trust agreement. They say that this fact, which the attached affidavit recites was discovered after the Court's opinion was filed, tends to support their contention that the trust instrument should not be construed to create a remainder by implication in the issue of Eve who may survive her  the result reached in the Court's opinion.
At a conference in my chambers, plaintiffs' counsel indicated that if his application for leave to amend under the general rule governing amendments was denied, he intended thereafter to apply under the rule governing newly discovered evidence. At the Court's suggestion, plaintiffs' counsel withdrew his motion so that he might file a new motion seeking leave to amend under both rules. The suggestion was made to accelerate the proceeding. At that conference defendants vigorously opposed plaintiffs' application. They contended that judgment should have been entered at that time in favor of the defendants. However, since the ruling had only been on plaintiffs' motion for judgment on the pleadings, the Court indicated to counsel that the pleadings were not then in the proper posture to warrant the entry of judgment for defendants.
The defendants later filed a motion for judgment on the pleadings. Subsequently, plaintiffs filed their renewed motion for leave to amend on both theories. Those motions were duly argued and are now before this Court for disposition.
Plaintiffs' identical applications to amend are as follows:
"Said separation agreement dated August 26, 1929, and said trust agreement dated August 26, 1929, were prepared by an attorney at law who was representing the said Elizabeth Ormond Wrenn duPont. At no time prior to the execution of said agreements dated August 26, 1929, was the plaintiff, Samuel Hallock duPont, represented by legal counsel."
Plaintiffs admittedly do not seek to file the proposed amendment on the theory that such evidence would, if true, invalidate the trust instrument. They see it as a piece of evidence in aid of the construction of the instrument for which they contend.
A motion for judgment on the pleadings under Chancery Court Rule 12 is a convenient device for determining a matter without trial where the pleadings show no dispute as to the material facts. 5 Cyc. of Fed.Prac. (3rd ed.) § 15.225. It is quite conceivable however that a decision on such a motion would reveal the possible materiality of facts which were not before the Court when it ruled on the motion. It does not follow therefore, contrary to defendants' contention, that the decision on a motion for summary judgment necessarily precludes the taking of evidence thereafter. I rather think the propriety of permitting the presentation *491 of additional facts under these circumstances is to be resolved by the Court in the exercise of judicial discretion.
Where seasonable application is made to present such evidence after the ruling on such a motion, no matter what form the application takes, and where it does not appear to be frivolous or based on unworthy motives, I see no reason why the matter should not be made part of the record so as to be available in the ultimate disposition of the case. Indeed, the evidence sought to be presented by means of an amendment would have been admissible at trial even though it was not set forth in the pleadings. I see no reason why the decision on plaintiffs' motion should preclude the bringing of this additional fact to the Court's attention. The rules of Court serve a substantial purpose but they should not be construed to operate without regard to their primary purpose, namely, to aid in the disposition of cases in the light of all the material facts which can reasonably and seasonably be made available to the Court.
The defendants do not oppose the proposed amendment on the grounds that it is frivolous or based on unworthy motives, and I conclude that it is seasonably presented. However, defendants do argue, as a ground for the denial of the amendment, that it is without merit insofar as any ultimate decision is concerned. However, the merits of the proposed amendment will not be resolved on the present application. I conclude that leave should be granted to file the proposed amendment under the general rule governing amendments.
The sequence of events should be as follows:
1. The entry of an order denying plaintiffs' motion for judgment on the pleadings.
2. The entry of an order allowing the amendment.
3. The denial without prejudice of defendants' motion for judgment on the pleadings.
Order on notice.

On Cross-Motions for Summary Judgment.
In its first opinion this Court ruled that a certain inter vivos trust instrument executed by plaintiff Hallock duPont created a possible interest in his daughter's issue and that in consequence the trust could not be terminated by him and his daughter. See opinion filed January 4, 1955. Thereafter this Court permitted an amendment to the complaint in which it was alleged that plaintiff Hallock duPont was not represented by an attorney when the trust instrument was signed but that his wife was so represented and her attorney drew the instrument. See opinion filed March 17, 1955. The defendants pleaded "no knowledge" to the amendment thereby putting plaintiffs to their proof.
Thereafter the parties took depositions and filed certain affidavits and documents. All this subject matter admittedly deals solely with the allegations of the amendment. Plaintiffs have moved for summary judgment and the parties have agreed that defendants' motions to dismiss should also be treated as motions for summary judgment. This is the decision thereon.
Based on the additional facts developed since this Court's first opinion, plaintiffs seek to have the Court reconsider its construction of the instrument. They contend that such facts show that plaintiff Hallock duPont, had no intention of conferring a benefit on the possible surviving issue of his daughter, Eve, when he executed the instrument. Defendants first say that the undisputed facts disprove the allegations of the amendment. But, they add, in any event the Court's previous construction of the instrument should not be changed.
Plaintiffs' counsel stress the allegations that Hallock duPont did not have counsel at the time the agreement was drawn but that his wife's attorney drew the trust agreement.[1] Since the truth of this allegation is one of the foundations upon which *492 plaintiffs seek to show that the settlor should not be held to have intended to grant a remainder to the possible issue of his daughter, let us see whether it is true. The parties have agreed that the fact that the pleadings put the question of attorney representation in issue does not prevent a decision on the pending motions. This is so because the material facts on this issue appear in the depositions, etc., and are not in dispute. The parties do differ as to the correct inference to be drawn therefrom.
I have read the depositions and the letters and I have no doubt that the attorney involved at the time the trust instrument was drawn (now deceased) represented both Hallock and his then wife. He had been Hallock's lawyer and the lawyer for his family for years. In this instance he dealt with Hallock through Hallock's mother and his brother-in-law. He was employed with full knowledge to work out a difficult situation.
Once plaintiffs concede the validity of the instrument, as they do, I find it difficult to give much weight to their argument that Hallock's then mental and physical condition should be given substantial weight in construing the instrument. After all Hallock had as little or as much to do with the provision in question as he had with the other provisions in the instrument which admittedly provide for the disposition of the corpus to the same possible issue under other circumstances.
In view of my conclusion that Hallock was represented by counsel, it follows that no inferences based on the truth of the allegations of the amendment can be drawn in his favor insofar as the proper construction of the trust instrument is concerned. It is therefore unnecessary to decide the consequences in the event plaintiffs had proved their allegations.
One may also ask, why should any particular preference be given to the grandfather as against his grandchildren in construing this instrument? It is true that the agreement was executed by Hallock, the grandfather, primarily to provide for his then wife and their two year old child, Eve, at a time when his wife was about to divorce him. But can we assume that Hallock was then any less interested than his wife in making provision for the possible children of that two year old daughter? Further, can we fairly infer that the attorney had some compulsion to give undue advantage to the possible issue of their then two year old child? I think not. The grandchildren would be as much his as his wife's. Mr. duPont was admittedly having health problems and marital difficulties. However, I do not think it reasonable to assume that any animus he may have held toward his wife extended to his then two year old daughter and her possible future issue. Indeed, it is undisputed that his mother took an active part in setting up the trust and there is no reason to believe that she wanted to harm her own son.
Moreover, it is quite apparent from a reading of the whole instrument that Mr. duPont, contrary to the argument of plaintiffs' counsel, dealt therein with the allocation of both corpus and income to possible issue of his daughter, Eve. See paragraphs B, C, D, E, G, and H. It is thus inconsistent with the language of the instrument itself to keep repeating, as plaintiffs do, that this agreement dealt only with Hallock's wife and daughter.
Plaintiffs also argue that the Court erroneously stated in its opinion of January 4, that the majority modern American rule supported the right to imply a remainder. Plaintiffs say the statement is incorrect as applied to an inter vivos trust instrument. I do not intend to dispose of this case on the basis of the relative number of precedents. Rather, I prefer to rely on what I consider to be the correctness of implying a remainder in this case. I am therefore willing to have the parties ignore my statements in my earlier opinion concerning the majority American rule even though I thought I had made it clear therein that I appreciated that we are here dealing with an inter vivos trust instrument. Indeed, I intended to indicate that I was referring to the language involved and not the particular type of instrument in which it appeared. *493 I find nothing in the cases relied upon by plaintiffs, Brock v. Hall, 33 Cal.2d 885, 206 P.2d 360, 11 A.L.R.2d 681, which shakes my belief in the fundamental soundness of my reasoning and conclusion as set forth in my earlier opinion.
I conclude that the additional facts do not call for any change in the Court's conclusion as to the proper construction of the instrument. It follows that plaintiffs' motion for summary judgment should be denied and defendants' motions for summary judgment should be granted.
Order on notice.
NOTES
[1] Formerly Equitable Trust Company was trustee but became Equitable Security Trust Company by virtue of a merger.
[1] In making their argument plaintiffs explicitly disclaim any intention of repudiating the instrument.