EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Mary Platt Van Trump,

*vs.*

HARRY HERON JOHNSON and HARRY H. J. SHOUP.

*New Castle, March 15, 1944.*

*Caleb S. Layton,* of the firm of Richards, Layton and Finger, for complainant.

*Alexander L. Nichols,* of the firm of Morris, Steel & Nichols, for Harry Heron Johnson.

*Ivan Culbertson,* for Harry Heron Johnson Shoup.

HARRINGTON, Chancellor: The complainant seeks to have this court determine the meaning of the "Sixth" paragraph of the will of Mary Platt Van Trump, deceased. By that paragraph, the testatrix provided that the residue of her estate be divided into "two equal parts or shares." She gave one of those shares to her daughter, Helen Elliott Johnson, absolutely. After the deduction of an absolute bequest of Fifteen Thousand ($15,000.00) Dollars to her son, Harry Heron Johnson, from the other one-half part, she bequeathed and devised the remainder to the complainant in trust:

"* * * to pay one-half of the net income arising from said trust estate semi-annually unto my son, Harry Heron Johnson, and to pay the other one-half of said net income arising from said trust estate semi-annually unto my daughter, Helen Elliott Johnson; said payments to be made so long as both my said children shall be living. If my said son, Harry Heron Johnson, should die prior to my daughter, Helen Elliott Johnson, then and in that event, I direct that said trustee shall assign, transfer and set over said trust together with all the accumulated income thereon unto my said daughter, Helen Elliott Johnson, freed and discharged from all trusts, and if the said Helen Elliott Johnson should not be living at the time of the decease of my said son, Harry Heron Johnson, then and in that event, I direct that

said trustee shall assign, transfer and set over the whole of the said trust estate together with all accumulated income thereon unto my said grandson, Harry Heron Johnson Shoup, freed and discharged from all trusts."

That instrument was apparently executed December 3rd, 1924. Helen Elliott Johnson, Harry Heron Johnson and Harry Heron Johnson Shoup, the daughter, son and grandson respectively of the testatrix, survived her. Grace Platt Johnson Shoup, another daughter, and the mother of Harry Heron Johnson Shoup, died prior to the execution of the testatrix' will. Helen Elliott Johnson died October 21st, 1942, and since that date Harry Heron Johnson and Harry Heron Johnson Shoup have been the only heirs at law and next of kin of the testatrix.

It is tacitly conceded that the distribution of personal property is alone involved, and the Delaware statute of distribution, § 3847, *Rev. Code* 1935, provides:

"The residue of the personal estate of a deceased person, after the payment of all legal demands and charges, shall be distributed to and among every the children of the intestate and the lawful issue of such children who shall have died before the intestate."

The questions on which the complainant trustee seeks instructions are:

(1) Whether the entire income from the trust fund since the death of Helen Elliott Johnson is payable to Harry Heron Johnson during his lifetime.

(2) Whether, upon the death of Helen Elliott Johnson, the income from the trust fund should thereafter be distributed, under the intestate laws of the State of Delaware, to Harry Heron Johnson and Harry Heron Johnson Shoup, in equal shares, during the lifetime of the former.

(3) Whether all, or any part, of the income from that fund, during the lifetime of Harry Heron Johnson, should be paid to, or accumulated for the benefit of Harry

Heron Johnson Shoup upon the theory that the latter has a vested interest in the corpus of the trust, and that all income accruing thereon, after the death of Helen Elliott Johnson, and not disposed of by the express provisions of the will also belongs to him as the ultimate taker of that fund.

(4) Whether the trust terminated upon the death of Helen Elliott Johnson and the entire corpus and all accumulated income thereon is now payable to Harry Heron Johnson Shoup, clear of any trust.

There is no express provision for the distribution of the income, derived from the corpus of the trust fund during the life of Harry Heron Johnson, after the death of Helen Elliott Johnson, if she predeceased him, and one question is whether he has any rights in that fund by necessary implication. The will merely directs the trustee "to pay one-half of the net income" arising therefrom "semi-annually unto my son, Harry Heron Johnson, and * * * the other one-half * * * semi-annually to my daughter, Helen Elliott Johnson; said payments to be made so long as both my said children shall be living." In the event of the death of Harry Heron Johnson, prior to the death of his sister, Helen Elliott Johnson, the trustee is directed to assign and transfer to her the whole of the corpus of the fund, "together with all the accumulated income thereon," freed and discharged from any trusts, whatsoever; but that contingency did not happen. The testatrix also directs that in the event of the death of her son, Harry Heron Johnson, without leaving his sister, Helen Elliott Johnson, to survive him, the whole of the corpus of the fund, "together with all accumulated income thereon," shall be assigned and transferred to Harry Heron Johnson Shoup, free from any and all trust provisions.

The language used does not justify the conclusion that the word "both" means anything but that, upon the death

of either, the son or daughter, the testatrix intended that the division of the income should cease. If she meant to give the whole of the income to her son for life should he survive his sister, unfortunately, she did not say so. See *Loring v. Dexter*, 256 *Mass.* 273, 152 *N.E.* 356.

Bequests by implication are not favored (1 *Page on Wills* (2d *Ed.*) § 819), and can only be sustained when the provisions of the will make it necessary. *Upton v. Lord Ferers*, 5 *Ves., Jr.*, 801. The probabilities in their favor from its provisions must be so strong that it cannot be reasonably supposed that the testatrix had any other intent. 1 *Underhill on Wills*, § 466; *Wilkinson v. Adam*, 1 *Ves. & B.* 422; *McCoury's Ex'rs. v. Leek*, 14 *N.J. Eq.* 70. An implied bequest cannot be based "upon silence, conjecture or the relationship of the parties." *Loring v. Dexter, supra* [256 *Mass.* 273, 152 *N.E.* 358]. As a general rule, a mere bequest, after the death of another, therefore, does not give the latter a life interest by necessary implication. 34 *Halsbury's Laws of England*, (2d *Ed.*) 429; *Chamberlin v. Springfield*, L.R. (1894) 3 *Ch.* 603. In the absence of something to indicate a contrary intent, a bequest or devise, after the death of another, to all of the heirs or next of kin of the testatrix and to a stranger, to a stranger alone, or even to but one of several heirs or next of kin of the testatrix, comes within that general rule of construction, and no life interest will be implied in favor of the person, on whose death it is to take effect. *Chamberlin v. Springfield, supra; Dailey v. Kunkel*, 82 *Ind. App.* 590, 147 *N.E.* 166; 34 *Hals. Laws of Eng.*, 430; 1 *Page on Wills*, (*L.T. Ed.*) 930; 1 *Underhill on Wills*, § 466; *Restatement, Law of Property*, § 116. However plausible a different conjecture might be, an intent for the interest to pass, under the intestate laws, during the lifetime of the latter, is possible. *Id.* If there are no other controlling provisions, a very different rule of construction is applied, however, when the gift after the death of another, is to all of the next of kin of the tes-

tatrix, and to them alone. If the enjoyment of their rights is so postponed, it would hardly be consistent with the clear language of the will to permit them to take at once under the intestate laws; and an intent to give a life interest to the person, on whose death their rights take effect, will be usually implied. *Id.* In many cases, no one else could take at the death of the testatrix. *Id;* 2 *Black Comm.* 381; see also *Doughty v. Stillwell,* 1 *Bradf. Sur.,* (N.Y.) 300, 311. In other words, a testator "cannot be supposed to give an estate to his heir after a certain time, and yet mean the heir to have it in the meantime; * * *." *Doughty v. Stillwell, supra.* A bequest of personal property is governed by the same principles. See *Hals. Laws of Eng.,* 430; *Chamberlin v. Springfield, supra.* In the latter case, the court said:

"What is the presumed intention of a gift of personal estate to the testator's next of kin according to the statute after the death of A? It is this: 'I do not intend my personal estate to go immediately on my death to the persons entitled to it by law, that is, according to the Statute of Distributions.' If, therefore, you find that those persons are only to take after the death of A, then it may be impossible to give effect to that intention except by implying a gift of a life estate to that person, after whose death the next of kin are to take, according to the terms of the will. But if, according to the terms of the will, the next of kin are not to take according to the statute, then the reasoning fails to the ground, and you cannot imply a gift to A, whether a wife or not, without doing violence to the terms of the Will."

There, the gift in trust, on the death of the named person, was only to a part of the next of kin of the testator, and the court held that during the life of that person it passed under the intestate laws to all of the testator's next of kin.

· The statement in *Doughty v. Stillwell, supra,* that a life interest will be implied even when the gift is to "one of the next of kin, who, in case of intestacy, would be entitled to a share of the thing bequeathed, after the death of A," is not sustained by the modern authorities (*Chamber-*

lin v. Springfield, supra; Dailey v. Kunkel, supra); nor does the mere fact that the person, on whose death the gift is to take effect, is one of the next of kin affect the application of the general rule of construction. *Chamberlin v. Springfield, supra.* Furthermore, the express gift of a portion of the income from the trust fund to Johnson during the lifetime of his sister does not make it any easier to imply another gift in his favor. 34 *Hals. Laws of Eng.*, 431. But, in any event, Harry Heron Johnson Shoup, the grandson of the testatrix, denies that the statute governing the distribution of personal property is controlling, and that Harry Heron Johnson is entitled to any share of the income from the trust fund since the death of Helen Elliott Johnson, in October of 1943.

Ordinarily, it seems that if no provision is made for the disposition of income accruing on a fund between the death of the testatrix and the time fixed for its distribution, the income will likewise be payable to the person ultimately entitled to the principal, if the gift is vested. 3 *Page on Wills, (L. T. Ed.)* § 756; *In re Heath, L.R.* (1936) *Ch.* 259; *Bye v. Strasbourg,* 102 *N.J. Eq.* 300, 140 *A.* 273; see also *Belcher v. Phelps,* 109 *Conn.* 7, 144 *A.* 659; *Hesselbrock v. First Nat. Bank & Trust Co. etc.,* 106 *N.J. Eq.* 339, 150 *A.* 783; 69 *C.J.* 782. It is conceded that on the death of Harry Heron Johnson, the ultimate gift clear of the trust, is vested; and, applying these principles, the grandson of the testatrix claims that he is entitled to such income as it shall accrue and be collected by the trustee from time to time. See *In re Heath, supra; Sanford v. Blake,* 45 *N.J. Eq.* 248, 17 *A.* 812. He admits that the context of the will may require the accumulation of such income for the benefit of the corpus (*Bye v. Strasbourg, supra*), but correctly points out, that in case of doubt, such construction is not favored. *Sanford v. Blake, supra; Hesselbrock v. First Nat. Bank & Trust Co., supra; Belcher v. Phelps, supra.* We must bear in mind, however, that whether the ultimate gift of principal

be vested or contingent, if it appears from the provisions of the will, when read as a whole, that through an oversight or otherwise, the testatrix did not intend to dispose of such income, or some part of it, it would be intestate property, and would be distributed accordingly. 3 *Page on Wills*, § 1156. *Shepard v. Union & New Haven Trust Co.*, 106 *Conn.* 627, 138 *A.* 809; *Foss v. State Bank & Trust Co.*, 343 *Ill.* 94, 175 *N.E.* 12. The latter principle seems to control this case.

The testatrix provides that upon the death of Harry Heron Johnson leaving his sister surviving him, the "said trust, together with all the accumulated interest thereon," shall be transferred to her. That provision could only have meant to include all income accruing on the fund *after* the death of Johnson. By almost identical language, the testatrix also provides that should Helen Elliott Johnson predecease Harry Heron Johnson, at his death "the whole of the said trust estate, together with all accumulated income thereon," shall be transferred to Harry Heron Johnson Shoup. The similarity in the language used with respect to the same subject matter is so striking that it is difficult to escape the conclusion that both phrases were intended to have the same meaning. In cases of doubt and in the absence of anything to indicate a contrary intent, that is a recognized rule of construction. 69 *C.J.* 84. Applying that rule, all income accruing during the lifetime of Harry Heron Johnson, after the death of his sister, would be intestate property.

This conclusion disposes of the other controverted questions.

A decree will be entered accordingly.