SAMUEL HALLOCK DUPONT AND EVE DUPONT REMER,
Appellants,

*vs.*

EQUITABLE SECURITY TRUST COMPANY, a corporation of the State of Delaware, Trustee, under a Trust Agreement dated August 26, 1929,
Appellee,

JOHN H. REMER, JR., and ELIZABETH WRENN REMER,
Additional Appellees.

*Supreme Court, On Appeal, May 1, 1956.*

*William S. Potter* and *James L. Latchum,* of Berl Potter & Anderson, Wilmington, and *H. Ober Hess,* Ballard, Spahr, Andrews & Ingersoll, Philadelphia, for appellants.

*Caleb S. Layton,* of Richards, Layton & Finger, Wilmington, for appellee Equitable Security Trust Company.

*Howard Duane,* Wilmington, for appellees John H. Remer, Jr. and Elizabeth Wrenn Remer.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice, for the majority of the Court: The questions before us are (1) whether an *inter vivos* trust agreement should be so construed as to create a remainder by implication in the issue of a beneficiary, and (2) if so, whether the remainder has failed.

On August 26, 1929 Samuel Hallock duPont and Elizabeth Ormond Wrenn duPont, his wife, having agreed to separate, entered into a trust agreement for the support of the wife and their infant daughter, Eve duPont, of whom the wife had custody. The agreement was to become effective upon the entry of a final decree divorcing the husband and wife from the bonds of matrimony.

Hallock and Elizabeth duPont were thereafter divorced. Elizabeth remarried in 1936 and died in 1942. Eve (now Eve duPont Remer) survived her mother, is married, and has two children. On April 5, 1954 Hallock and Eve served upon the trustee of the trust a notice that they elected to terminate the trust. They asserted that since the death of Elizabeth they have been the only persons with any interest in the trust, and that therefore they had the right under Delaware law to terminate it. See *Weymouth v. Delaware Trust Co.,* 29 *Del.Ch.* 1, 45 *A.2d* 427. They accordingly demanded that the trustee deliver to them all the trust property. The trustee declined to do so and Hallock and Eve brought suit.

The Chancellor held that the agreement vested in the issue of Eve, by implication, a remainder interest in the corpus of the trust, and that it had not failed. See *ante p.* 261, 115 *A.2d* 482. He therefore dismissed the complaint. Hallock and Eve appeal.

Our first task—and a laborious one, as the Chancellor observed— is to analyze the provisions of the trust agreement.

It consists of four parts numbered (1) to (4). Part (1)—the only one of importance here—is divided into several paragraphs. They are not lettered or numbered. Of these paragraphs three relate to the payment of income and distribution of the corpus, and are the ones that concern us. For convenience of reference, counsel and the court below have sub-divided these three paragraphs into eight sections lettered A to H, and that method of designation is followed in this opinion.

The corpus of the trust consisted of 12,000 (now 48,000) shares of the common stock of E. I. duPont de Nemours & Company. It was transferred to Equitable Trust Company (now Equitable Security Trust Company) in trust to carry out the purposes of the agreement, including a direction "to divide and pay over the corpus of the trust estate in accordance with the provisions to that end hereinafter set forth", and to collect and pay over the income as directed.

The eight sections, A to H, as before stated, deal with the disposition of the trust property. The possible beneficiaries of the trust are (1) Elizabeth, (2) Eve, (3) Eve's issue, and (4) Hallock or his estate. Elizabeth's interest and Eve's interest are limited to income. Hallock also reserved certain rights to the income. The corpus is distributable only to Eve's issue or to Hallock (or his estate).

Because of the many different contingencies that might happen, arising out of (1) different sequences of death, (2) marriage or re-marriage of Elizabeth, and (3) death of Eve leaving issue or without leaving issue, the agreement is—possibly unavoidably—prolix and complicated, the dispositive provisions alone occupying six pages of the printed appendix. Much of the prolixity flows from the method adopted in dealing with the contingency of Elizabeth's remarriage. Sections A to F (constituting the first two paragraphs of the agreement as actually drawn) deal with the payment of income and distribution of the corpus in the event that Elizabeth does not remarry. Sections G and H (constituting the third paragraph as actually drawn) deal, generally speaking, with the same subjects in the event

that she remarries. It was therefore necessary, if all contingencies were to be provided for, that provisions dealing with the various contingencies that depended on the sequences of death and upon Eve's dying with or without issue should be set forth not only in Sections A to F, but also in Sections G and H. But, as will be seen, Sections G and H fail to provide specifically for at least one case covered by the other sections, viz.: disposition of the corpus if the sequence of events should be (1) Elizabeth's remarriage; (2) death of Elizabeth and death of Hallock, Eve surviving; and (3) Eve's death, leaving issue surviving her.

The following is a summary of the provisions of the agreement:

*Sections A, B and C.* These deal with the disposition of the income prior to the death of Elizabeth as follows:

$3000 a month to Elizabeth for life or until remarriage.

$1000 a month to or for the benefit of Eve; or, if Eve predeceases her mother leaving issue, to such issue until death of Elizabeth.

The remainder of the income to Hallock; and upon his death to Eve for life, or if she predeceases her mother leaving issue, to such issue until death of Elizabeth.

*Section D.* We quote it in full as follows:

"If the said Elizabeth Ormond Wrenn duPont should not, after she shall have been divorced, as aforesaid, remarry and should therefore continue to receive the income hereby provided for her from the said trust estate during the remainder of her life, then and in that event, upon the death of the said Elizabeth Ormond Wrenn duPont the said sum of $48,000, payable hereunder out of said net income of said trust estate unto the said Elizabeth Ormond Wrenn duPont and unto or for the benefit of the said Eve duPont or her lawful issue, shall be paid by the said Trustee, in equal monthly instalments, as follows,—the sum of Twelve Thousand Dollars ($12,000.00) shall be paid annually unto the said Eve duPont for life and the sum of Thirty-six Thousand Dollars ($36,000.00) shall be paid annually unto

the said Settlor, if he be then living, but if the said Settlor be not then living, or upon his death thereafter, the whole of the said sum of $48,000 shall be paid by the said Trustee, in equal monthly instalments, unto the said Eve duPont, daughter of the said Settlor, for and during the term of her life and, upon the death of the said Eve duPont, the entire corpus of the trust estate shall thereupon be assigned, transferred and paid over by the said Trustee unto the lawful issue of the said Eve duPont, in equal shares, *per stirpes* and not *per capita,* free and discharged from any and all trusts whatsoever."

*Section E.* This deals with both income and corpus in the event Eve predeceases her mother leaving issue, as follows:

*Income:* Such part as Eve had at her death to her issue until the death of Elizabeth.

*Corpus:* Upon death of Elizabeth, to Eve's issue.

*Section F.* This deals with corpus in the event Eve dies without issue as follows:

*Corpus:* Upon death of Eve without issue, either before or after her mother, to Hallock, or if he be deceased, to his issue, or in default of issue, to his next of kin.

Before examining Sections G and H we pause to note the following:

(1) All the foregoing provisions, by express language, take effect *only* if Elizabeth does not remarry. Since Elizabeth did remarry, they are not directly applicable to this case.

(2) Plaintiffs contend that these sections contain no provision for the contingency that Hallock survives both Elizabeth and Eve, and Eve dies leaving issue. The language of Section D relating to the gift of the corpus to Eve's issue, they say, contemplates the prior death of Hallock, for two reasons: first, the life estate reserved by Hallock in Section D might well preclude the termination of the trust upon the death in Hallock's lifetime of Eve (or of Elizabeth, as the case might be); second, the language of Section D relating to Eve's life estate after her mother's death and to the gift of the

remainder upon her death is preceded by the phrase—"but if the Settlor be not then living, or upon his death thereafter". This would seem to mean that Hallock's death must precede Eve's before her life estate, and the remainder to her issue, can take effect.

Section E (which with Section D forms one paragraph as actually drawn) appears to be susceptible to the same construction. If plaintiffs' construction is correct, the remainder to Eve's issue is contingent upon their surviving Hallock, and there is no provision expressly disposing of the corpus if Hallock survives both Elizabeth and Eve, Eve leaving issue.

It is unnecessary in this case finally to decide the point. We shall for our present purpose assume that plaintiffs' contention is correct.

(3) Apart from the omission just noticed, the provisions of Sections A to F embody a reasonably complete scheme of distribution of the income and corpus of the trust. They clearly provide for a gift of the corpus to Eve's issue upon the death of Elizabeth and Eve, except possibly in the event that Hallock survives both; in default of issue, it goes to Hallock or to his issue or next of kin.

The last two sections deal with the disposition of the trust property if Elizabeth remarries.

*Section G.* This section deals only with income, as follows:

$1000 a month to Elizabeth for life.

$1000 a month to or for the benefit of Eve for life.

The remainder of the income to Hallock for life; and upon his death to Eve for life, or upon her death to her issue until death of Elizabeth, or if no issue to Hallock's residuary legatees or next of kin.

*Section H.* This is the section of special importance. We quote it in full, and for convenience of reference have subdivided it into three numbered paragraphs.

"[H] (1) Upon the death of the said Eve duPont leaving lawful issue her surviving and being survived by her said mother,

the said Trustee shall distribute the net income of the trust estate in the following manner, to wit—$12,000, part thereof, shall be paid annually to the said Elizabeth Ormond Wrenn duPont, for life, as aforesaid, $12,000, other part thereof, shall be paid annually to and among such lawful issue of said Eve duPont, in equal shares, until the death of said Elizabeth Ormond Wrenn duPont, and the remainder shall be paid until the death of said Elizabeth Ormond Wrenn duPont, unto the said Settlor, if he be living, and if he be deceased, or upon his decease, such remainder shall also be paid annually to and among such lawful issue of said Eve duPont, in equal shares;

"(2) and, upon the death of said Elizabeth Ormond Wrenn duPont, if there be lawful issue of the said Eve duPont then surviving, the said Trustee shall assign, transfer, pay over and deliver the entire corpus of the trust estate unto such issue, in equal shares, *per stirpes* and not *per capita,* free and discharged from any and all trusts whatsoever;

"(3) but, if there be no such lawful issue then surviving, *or if the said Eve duPont, having survived her mother, should die without leaving lawful issue her surviving,* then and in either such event, the said Trustee shall assign, transfer, pay over and deliver the entire corpus of the trust estate, free and discharged from any and all trusts whatsoever, unto such persons as are entitled to the residue of the estate of the said Settlor under his last will and testament, or, in default of such last will and testament, unto such persons as may be the next of kin of the said Settlor under the law of the State of Delaware." [Italics supplied.]

We note that Section G is correlative, with some unimportant differences, with Sections A, B and C. Section H, however, although corresponding in some ways to Sections D, E and F, fails to provide for the disposition of the corpus in at least two contingencies, and possibly in a third:

1. Hallock surviving Elizabeth and Eve, Eve leaving issue.

This is the possible omission we have found in Sections D, E and F. It is, of course, one of the less likely contingencies.

2. Hallock surviving both Elizabeth and Eve, Eve leaving no issue or leaving issue predeceasing Elizabeth.

This contingency is specifically covered by Section F, which gives the settlor (or his issue or next of kin) the corpus. It is likewise one of the less likely contingencies.

3. Eve surviving both Elizabeth and Hallock, leaving issue. This is one of the more likely contingencies, and is specifically covered by Section D. Section H fails to provide for it, unless a remainder in the issue is to be implied from the underlined language of the above quotation. The first question before us, as above stated, is whether that language, read in the light of the other provisions of the agreement, creates a remainder in the issue by implication.

Before considering this question, however, a preliminary contention must be dealt with. Plaintiffs assert that the doctrine of gifts or remainders by implication has no application to *inter vivos* trust agreements. They concede, as we understand it, that the doctrine is well established in the law of wills. The Delaware cases that appear to recognize the doctrine (at least inferentially) concern wills. See *Rickards v. Gray*, 6 *Houst.* 232; *Brown v. Hodgson*, 1 *Del.Cas.* 380; *Equitable Trust Co. v. Johnson*, 28 *Del.Ch.* 45, 36 *A.2d* 257. Plaintiffs say that the rule stems solely from the presumption against intestacy, and hence applies only to wills.

With this contention we cannot agree. Most of the decisions dealing with *inter vivos* agreements apply the rule. See the cases collected in the annotation in 11 *A.L.R.2d* 681. In some of them the application of the rule is taken for granted without discussion, *e. g., In re Scott's Trust*, 322 *Pa.* 1, 184 *A.* 245; *First National Bank & Trust Co. of Yonkers v. Palmer*, 261 *N.Y.* 13, 184 *N.E.* 477. In other cases the courts have expressly held that the rule is to be applied to agreements as well as to wills. See *Brock v. Hall*, 33 *Cal.2d* 885, 206 *P.2d* 360, 11 *A.L.R.2d* 672; *Eustace v. Dickey*, 240 *Mass.* 55, 132 *N.E.* 852.

■ Plaintiffs argue that in several of the cases applying the rule to *inter vivos* trusts are cases decided after the death of the settlor and are therefore distinguishable. There is some judicial authority for this, but we cannot assent to the soundness of the distinction. The construction of the agreement must depend on the intent of the maker as disclosed by its language at the time of execution. *Brock v. Hall, supra.*

Authority for the contention that the rule of gifts by implication does not apply to *inter vivos* agreements is found largely in general language in some of the decisions. Nearly all of these cases involve agreements quite different from that before us. See *Chater v. Carter,* 238 *U.S.* 572, 35 *S.Ct.* 859, 59 *L.Ed.* 1462; *Lillard v. Lillard,* 63 *Ohio App.* 403, 26 *N.E.2d* 933; *Apperson v. Karsch,* 192 *Tenn.* 499, 241 *S.W.2d* 545; dissenting opinion in *Brock v. Hall, supra.*

It is true that the presumption against intestacy has much to do with the doctrine of implied gifts in the case of wills, whereas it has no application to *inter vivos* agreements. But, with the exception of the opinion in *Apperson v. Karsch, supra,* we are cited to no case unequivocally holding that a remainder by implication may never be found in an *inter vivos* agreement. The judicial differences of opinion seem to stem largely from different views upon the extent of the application of the rule to *inter vivos* agreements. The more conservative approach is that the absence of any presumption against intestacy robs the rule of a great deal of its force when applied to agreements. But even the courts adopting this view do not reject completely the application of the rule to *inter vivos* trusts. Thus, in *Chater v. Carter, supra* [238 *U.S.* 572, 35 *S.Ct.* 864], the court said:

> "What she [the beneficiary] was to receive, and when she was to receive it, was stated in plain terms. Beyond this, we think there are none of the implications that are deemed to arise in cases of wills."

But the court also said:

> "The guiding principle must be, to seek the intention of the settlor. * * * Not, What did he intend to say? but, What did he intend by what he did say? must be the test."

And in the dissenting opinion in *Brock v. Hall, supra* [33 *Cal.2d* 885, 206 *P.2d* 367], relied upon by appellants, it is said:

> "Clearly, the settled rules of construction of particular language are equally applicable to a will and to an *inter vivos* trust."

On principle, we see no reason why the rule of remainders by implication may not in certain circumstances be applied to an *inter vivos* trust. The rule does not rest wholly upon a presumption against intestacy. That presumption is, as the Chancellor said, only an aid to construction—an aid to the discovery of the testator's intent. 2 *Page on Wills* § 926. There are types of *inter vivos* trusts analogous to wills. A settlor frequently seeks to divest himself completely of any interest in the trust property, and to anticipate death in the distribution of that particular property to his next of kin or to others.

But this is not to say that the rule should be applied with the same freedom to an *inter vivos* trust as to a will. As was said by the Supreme Court of Hawaii in the *Chater* case, *Chater v. Carter,* 22 *Haw.* 34:

> "Assuming the rule is applicable to conveyances creating trusts operating *inter vivos,* we think that the intention to make a gift by implication would be less readily found in such an instrument than in a will where it would be supported by the presumption against intestacy."

Caution is indicated in implying a gift to grandchildren in the case of an agreement such as we find here—an agreement of separation between husband and wife, designed primarily, as plaintiff correctly says, for the support of the wife and an infant daughter. It goes much too far, however, to say that a gift by implication may never be found in such an agreement. The question is, as always, one of construction.

## I.

We recur to the first question before us: Should a remainder in Eve's issue (whether vested or contingent) be implied from the language of Section H? The clause following the second semicolon reads:

"but if there be no such lawful issue then surviving [i. e., upon the death of Elizabeth, Eve having predeceased her mother], *or if the said Eve duPont, having survived her mother, should die without leaving lawful issue her surving,* then \* \* \* the said Trustee shall assign \* \* \* the entire corpus of the trust estate" to Hallock's residuary legatees or next of kin. [Italics supplied.]

Language of the kind above quoted, providing for a gift over of the remainder if the life tenant die without issue, unaccompanied by a specific provision for the issue to take the remainder, is frequently met with in wills and deeds. It has been the subject of much litigation and judicial construction.

This case is not a case in which it is sought to imply a primary gift from the general intent of the settlor, nor is it a case in which a remainder by implication depends only on a finding of such intent. It is one involving the construction of specific language which has acquired a special meaning. Thus, in his dissenting opinion in *Brock v. Hall, supra,* Judge Edmonds refers to the phrase " 'die without issue' " and says:

> "Centuries of judicial construction have given to those words certain connotations which permit reading into them a meaning beyond that of common usage."

Authority for this statement is so extensive that no more than a brief reference to it is required.

In Simes, *Future Interests,* § 434, it is said:

> "The typical case where courts sometimes imply a remainder by reason of the terms of the gift over is a devise to A for life, with a gift over to B if A dies without children."

The prevailing rule in this country is that such language implies a remainder in the issue, especially if there are other features of the instrument that support the implication. See the cases collected in the annotation in 22 *L.R.A.2d* 177, 186-195.

The rule of the Restatement is that a gift will be implied unless a contrary intent is found in other language.

"When property is limited by an otherwise effective conveyance 'to B for life, and if B dies without issue, then to C', or by other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, an inference is required that the conveyor has limited an interest in favor of the issue of B, in the event that B dies survived by issue." *Restatement of the Law of Property,* Part 3, § 272.

The reason for the rule is, of course, the natural inference from such language that the gift over is not to take effect if the life tenant leaves issue, and that in that event it is reasonable to infer that the issue takes. In 2 Simes, *Future Interests,* § 434, the writer also says:

"In the majority of cases, it would seem that the only rational explanation for the gift over on death of the life tenant without children is that the testator intended the children to take if the life tenant died with children."

There is indeed some difference of view as to whether language of the kind here involved is in itself sufficient to create a remainder by implication. But it is almost uniformly held that such language is susceptible of such a construction, and that if that construction is supported by other language of the instrument, the remainder will be implied. 33 *Am.Jur., Life Estate, Remainders, etc.,* § 63; annotation in 51 *L.R.A.,N.S.,* 477, 501-510.

In this case we are not required to choose between the two views, because we think that there are other provisions in the trust agreement that support the inference of a remainder by implication in Section H and exclude any other rational construction.

In reviewing these other provisions, we must bear in mind that Sections D and E apply if Elizabeth does not remarry, and Section H applies if Elizabeth does remarry. Section D, as above stated, gives the corpus to Eve's issue in the contingency that she survives Elizabeth and Hallock leaving issue. Section H has no corresponding provision.

We have thus the remarkable situation that the gift of the corpus to Eve's issue, after the death of the other beneficiaries, would depend upon the fact of Elizabeth's non-remarriage.

Now, this result is on its face unreasonable. The remarriage of Elizabeth, which has the effect of reducing the amount of her annual income from the trust, appears to be a circumstance that bears no relation to any rational scheme for the devolution of the corpus of the trust. What possible difference could it have made to Hallock, in considering a corpus provision for the benefit of his grandchildren after Elizabeth's death, whether his divorced wife had remarried or had not remarried?

But this is not all. In the contingency that Eve and Hallock predecease Elizabeth and Eve dies leaving issue surviving Elizabeth, the corpus is given to the issue regardless of Elizabeth's remarriage. Section E and Section H are in this respect correlative.

The two contingencies referred to, plus the contingencies of the remarriage or non-remarriage of Elizabeth, make four cases that the agreement deals with in disposing of the corpus. In three of these cases the corpus expressly goes to Eve's issue; in the fourth there is a reversion to Hallock's estate *if Eve dies without issue*. The inference that in this case also the intent was that Eve's issue should take seems to us irresistible.

We think, therefore, that the language of Section H, relating to the contingency that Eve survives her mother and dies without issue, read in the light of the other provisions of the agreement, should be construed to create a remainder by implication. This is, we think, the only reasonable construction. The construction of a resulting trust to Hallock would, as the Chancellor observed, impute to the author of the instrument an intention wholly capricious.

The plaintiffs argue that a remainder should not be implied because the agreement, unlike many such trust agreements, *e. g.,* that construed in *Brock v. Hall, supra,* evidences no intention on the part of the settlor to divest himself entirely of the trust property. On the contrary, say the plaintiffs, the settlor expressly provided for a reversion to himself in several instances.

It is true that there can be no presumption here, analogous to the presumption against intestacy, that the settlor intended a final disposition to others of the trust property. This argument on its face has some force, and supplies an illustration of the pertinency of the observation we have before made, *i. e.,* that caution is indicated in applying to such an agreement the rule of remainders by implication.

But our analysis of the agreement before us reveals that the argument is inapplicable here. There are two contingencies in which the settlor provided for a reversion to himself or to his estate or next of kin. (Sections F and H.) In each of these cases the reversion is conditioned upon the death of Eve without issue, whether or not Eve survives her mother. Such provisions do not suggest any inference contrary to the finding of a remainder by implication under Section H. In fact, they tend to support it.

Nor do we think that much weight is to be attached to the possible omission from both parts of the agreement of a provision dealing with the contingency that Hallock survives both Elizabeth and Eve and Eve leaves issue. That contingency is one of the more unlikely ones. The two parts of the agreement—(1) Sections A to F and (2) Sections G and H, were, we think, intended to be correlative. This omission is common to both. We think, therefore, that it has no bearing on the question before us. If the issue take only if they survive Hallock as well as Eve, the only result is that the remainder is doubly contingent. But this in no way impairs the necessary inference from the language of Section H, supported by Sections D and E, that if they do survive both Hallock and Eve, they take the corpus. The omission from Section H of a provision for Hallock's benefit in the contingency of Hallock's surviving both Elizabeth and Eve, Eve leaving no issue or leaving issue predeceasing Elizabeth, likewise raises no contrary inference. Its consequence is obviously of no importance, for the corpus would revert to Hallock by resulting trust.

Plaintiffs stress the fact that the primary purpose of the agreement was to provide for the support of Elizabeth and Eve, and that

any benefit to the issue was secondary. They say that the agreement contains no provision for the payment of income to Eve's issue if (1) Eve predeceased her mother before attaining the age of 21 or (2) if Eve survived her mother and then died leaving issue. The implication of the second statement is not quite accurate, since if Eve survives both Hallock and Elizabeth and dies leaving issue (Elizabeth not having remarried) the issue would take the corpus under Section D and would thus receive income. But it is correct, in general, to say that the rights of the issue in income are limited ones, and do not evidence an intention to provide income for the issue in all circumstances. Nevertheless an intention to give the corpus to Eve's issue if she survives both Elizabeth and Hallock clearly appears, and this fact is dispositive of this phase of the case.

Plaintiffs criticise certain language of the Chancellor's opinion. Thus the Chancellor stated broadly that under Sections D and E the issue is to take the corpus; whereas it may be (as we assume here) that they are to take the corpus only if they survive Hallock. It is nevertheless true that if they do survive him, they do take it.

Plaintiffs also say that the Chancellor applied to the agreement rules of construction appropriate only to a will. He appears to have done so, but to a limited extent. Thus he refers to the absence of any intent of the settlor to penalize his grandchildren and to the fact that a resulting trust to the settlor would follow if no implied remainder is found—a result he appeared to assume should be avoided if possible. Granting that these considerations are more appropriate to the construction of a will than to the construction of this trust agreement, we think that this circumstance does not impair the soundness of the Chancellor's conclusion, which, like ours, is based primarily upon the language of Section H supported by other provisions of the agreement.

▮ Plaintiffs stress the circumstances surrounding the execution of the agreement. At the time of its preparation and execution Hallock was suffering from a severe nervous collapse. Negotiations with Elizabeth were conducted by his mother and brother-in-law. The agreement was prepared by counsel who, the Chancellor expressly found, represented both parties in the matter. Plaintiffs concede the

validity of the agreement. But they argue than in the circumstances Hallock had no "intent" and no intent can be imputed to him. This, we think, is simply to say that one who signs an agreement prepared by another, without intending to consent to all its provisions, or without understanding them, is not bound by the intent disclosed by its language, though its validity is not questioned. The unsoundness of this contention is manifest. If accepted, it would overthrow the settled law that a written contract conceded to be valid is binding on the parties, whether they understood it or not, in the absence at least of special circumstances not here present. We are in accord with the Chancellor's holding that in the circumstances of this case no weight is to be given to the state of Hallock's health at the time the agreement was prepared and signed.

## II.

Having found that the language of Section H implies a remainder to Eve's issue if Eve survives Elizabeth and Hallock leaving issue, we must decide whether, under the provisions of that section the implied remainder has failed.

Plaintiffs make the following contention:

The language of Section H, like that of Section D, clearly contemplates that Hallock's death must precede Eve's before any gift of the corpus can take effect. This is so, they say, because of the life estate reserved to Hallock by Section G. The distribution of the corpus expressly provided for under paragraph (2) of Section H and under the first clause of paragraph (3) is to take place on Elizabeth's death, and these clauses assume the prior death of Hallock. If Hallock survives Elizabeth, there can be no distribution of the corpus, since the trust will be continued to pay Hallock his reserved income for life. (Presumably plaintiffs rely upon the principle that a trust will be continued as long as necessary to carry out its purposes. Cf. 4 Bogert, Trusts and Trustees, § 991.) Moreover, the distribution under paragraph (3) is not to be made to Hallock if then living, as is provided in the correlative Section F, but to his residuary estate. The reservation to Hallock's estate on Elizabeth's death also presupposes the prior death of Hallock.

Proceeding further from this premise, plaintiffs argue that the implied gift to Eve's issue in the survival clause contemplates not only the death of Hallock (and Elizabeth) prior to the death of Eve, *but also the death of Hallock prior to the death of Elizabeth.*

Plaintiffs' argument on this point runs as follows:

Paragraph (2) of Section H and the first clause of paragraph (3) fix the time for distribution of the corpus as the time of the death of Elizabeth, Hallock having predeceased her. The second clause, introduced by the disjunctive "or", is the clause that contains the implied remainder to Eve's issue if Eve survives her mother. Hence this clause, which is part of the same sentence as the first clause, separated only by commas, also impliedly contains the condition that Hallock shall have predeceased not only Eve, but also Elizabeth. Since Hallock survived Elizabeth, the implied remainder fails.

We shall assume, *arguendo,* that the implied remainder to Eve's issue is conditioned upon the death of Hallock (as well as that of Elizabeth) prior to the death of Eve. But is it also conditioned upon Hallock predeceasing Elizabeth? The question at once arises: Why should an implied remainder to the issue be made to depend upon a particular sequence of deaths of Hallock and Elizabeth? What difference does it make who dies first, provided that they both predecease Eve?

The first step in plaintiffs' reasoning, as above stated, is the proof that Hallock must predecease Elizabeth if the express provisions for the remainder to Eve's issue are to be given effect. But this conclusion flows from the fact that the trust is by its terms to be terminated on Elizabeth's death. Because of Hallock's life estate, it is said, the termination of the trust and distribution of the corpus can be effected only if he has predeceased Elizabeth.

But the same reasoning is not applicable to the case in which Eve survives her mother. The language of the survival clause contemplates that after Elizabeth's death the trust continues, for she (and Hallock, if he be living) continue to receive income under

Section G. The limitation of Hallock's income to the life of Elizabeth, found in paragraph (1) of Section H, does not apply. The disposition of the corpus to Hallock (or to Eve's issue by implication) takes place as of a date after Elizabeth's death. The phrase "then surviving", which appears in the first clause, does not apply to the survival clause. In the latter clause, the event terminating the trust is Eve's death. Hence the necessity for Hallock's predeceasing Elizabeth in order to terminate the trust, which plaintiffs contend applies to paragraph (2) and to the first clause of paragraph (3), does not apply to the "survival clause" of paragraph (3). To effect termination of the trust under the survival clause it is only necessary that Elizabeth and Hallock predecease Eve. But the sequence of deaths of Elizabeth and Hallock is immaterial.

This conclusion, we think, leads to a result much more reasonable than that contended for by plaintiffs. We have before noted the capricious intention to be imputed to the settlor from a construction that would make the implied remainder to Eve's issue depend upon the adventitious circumstance of Elizabeth's remarriage. In like manner, a construction of the instrument that would make the implied remainder depend upon a particular sequence of deaths of Hallock and Elizabeth—a circumstance not related to any reasonable scheme of distribution—would again result in imputing caprice to the settlor.

Of course it is true that a settlor may be as capricious as he likes, provided his intent is clear. But in construing the diffuse and repetitious clauses of this involved instrument, which is far from simple or clear in many respects, a court must, we think, seek a result that is reasonable and consistent with such scheme of distribution as can be spelled out of its provisions, taken all together.

Now, if we look at Section D, it is clear that if Eve survives both Elizabeth and Hallock and dies leaving issue, the issue takes the corpus, regardless of the sequence of deaths of Elizabeth and Hallock. We have before noted the attempted parallelism between Sections D, E and F and Sections G and H. True, this parallelism does not hold in every respect; but the general scheme is there. It

furnishes support for the conclusion that the survival clause of Section H should be construed to effect the same result as that explicitly set forth in Section D. This result is that if Eve survives both Hallock and Elizabeth and dies leaving issue, the issue take the corpus, no matter whether Hallock predeceases Elizabeth or Elizabeth predeceases Hallock.

Our conclusions are (1) that a remainder to Eve's issue (whether vested or contingent is immaterial) is implied from Section H, and (2) that such remainder has not yet failed simply because Hallock has survived Elizabeth. It follows that the plaintiffs are not the sole persons interested in the trust, and cannot now terminate it.

The judgment of the Court of Chancery is affirmed.

WOLCOTT, Justice (dissenting): I do not agree with the majority of the Court. Since, in my mind, the proper construction of Sections G and H of the trust instrument imposes conditions upon any remainder to the issue of Eve (whether implied or not) of such a nature that under the factual development any ultimate gift of corpus to her issue has now failed, I think it unnecessary for us to decide whether the clause of Section H(3) emphasized in the first part of the majority opinion requires the conclusion that an implied remainder to Eve's issue was intended. In order to decide this appeal, it may be assumed that it was so intended without specifically so deciding.

As the majority of the Court has pointed out, the dispositive provisions of the trust instrument are divided into two parts, conditioned upon the remarriage or non-remarriage of Elizabeth following her divorce from Hallock. Since, in fact, Elizabeth did remarry, we are concerned with the meaning of those provisions intended to take effect upon the happening of that contingency. Those provisions are contained in Sections G and H of the instrument. In my opinion, the provisions of Sections G and H contain conditions attached to any ultimate gift of corpus to Eve's issue which are now impossible of fulfillment, with the result that at the present time Hallock and Eve, as the only persons having any possible interest

in the trust, may, under the rule of *Weymouth v. Delaware Trust Co.,* *29 Del.Ch.* 1, 45 *A.2d* 427, unite to terminate it.

Sections G and H constitute a single paragraph of the instrument and provide for the disposition of income and corpus upon the event of the remarriage of Elizabeth following her divorce. By Section G the income support of Elizabeth for her life is reduced from $36,000 per year to $12,000; the income support of $12,000 per year for the life of Eve is continued; and the balance of the income is directed to be paid to Hallock "during his life" and upon his death to Eve "for her life", and in case of her death to her issue "until the death of the said Elizabeth".

Certain obvious results flow from Section G: Elizabeth is a life beneficiary of income; Eve is a life beneficiary of income; Hallock is a life beneficiary of income; and finally Eve's issue are income beneficiaries only upon the condition that both Eve and Hallock predecease Elizabeth. This final conclusion is forced by the provision that Eve's issue shall take the balance of income only until the death of Elizabeth, and since Hallock had reserved the entire balance for his life it necessarily follows that he must predecease Elizabeth in order for Eve's issue to take any of the residual income. As far, therefore, as the provisions of Section G are concerned, any gift to the issue of Eve is conditioned upon both Hallock and Eve having predeceased Elizabeth.

Section H(1) directs that if Eve predeceases Elizabeth and leaves issue the $12,000 annual payment to Elizabeth shall be continued, and that the $12,000 annual payment for Eve's benefit shall be paid to Eve's issue until the death of Elizabeth, and that the remainder of income shall be paid to Hallock, if he is living, and if he be dead, or if he dies before Elizabeth, then the remainder shall be paid to Eve's issue.

Under the provisions of Section H(1) all income benefits from the trust end with the death of Elizabeth. Thus, by Section H(1), Eve's issue receives income only until the death of Elizabeth, which necessitates the conclusion that Section H(1) contemplated the termination of the trust upon the death of Elizabeth if Eve had prede-

ceased her but Hallock survived. This is so whether or not Eve died with or without leaving issue surviving.

Section H(2) directs that the corpus of the trust be transferred to the issue of Eve upon certain conditions. Expressly stated is the condition that Eve shall have predeceased Elizabeth and left lawful issue, in which event, upon the death of Elizabeth, the trustee is directed to pay over the corpus to Eve's issue. Section H(2) contains no provision for the postponement of the distribution of the corpus upon the death of Elizabeth. The direction to the trustee is mandatory. This being so, it is apparent that there is a further implied condition attached to the gift of the corpus to the issue of Eve upon the death of Elizabeth, Eve having predeceased her. This implied condition is that Hallock, too, must have predeceased Elizabeth.

The conclusion that such a condition necessarily must be implicit in Section H(2) is forced by the prior reservation by Hallock in Section G and Section H(1) of all of the excess income from the trust not required to meet the income payments to Elizabeth and Eve's issue, if she has predeceased Elizabeth, both of which specifically end upon the death of Elizabeth. Unless, therefore, the condition of Hallock's death prior to that of Elizabeth is implicit in Section H(2) the result would be that upon the death of Elizabeth the issue of Eve, while entitled to the corpus, would have their enjoyment of it postponed during the life of Hallock, and in the interim would receive nothing whatsoever for their support. Such a result would be wholly unreasonable, for what possible motive would lead a grandfather to provide support for his grandchildren until the death of their grandmother and then strip them of any support whatsoever as long as he himself lived.

Section H(2), therefore, must be construed as contemplating the termination of the trust upon the death of Elizabeth, Eve having predeceased her. If Hallock survives Elizabeth, the gift to Eve's issue fails and Hallock takes the corpus by way of a resulting trust. Of course, however, under the facts Eve did not predecease Elizabeth so the gift to her issue under Section H(2) has failed in any event.

Section H(3) contains the dispositive provisions with which we are concerned specifically, for it is the only part of Sections G and H which provide for the contingency of Eve surviving Elizabeth. It must be remembered that Section H(1), (2) and (3) is in fact one sentence of a single paragraph made up of both Section H and Section G. As such, sub-paragraphs (1), (2) and (3) must be read together and in harmony with the general dispositive scheme disclosed by the whole of Sections G and H. As has been pointed out, Section G and Section H(1), (2) clearly contemplate the termination of the trust upon the death of Elizabeth, if Eve has predeceased her. Upon that event, the corpus is given outright to Eve's issue by Section H(2), if Hallock is also dead at that time; but if he is living, then the gift to Eve's issue by Section H(2) fails forever.

Section H(3) was apparently intended to take care of the precise situation which has occurred, *viz.,* the survival of Elizabeth by Eve. The manner of doing so was to provide specifically for the contingency of the survival of Eve. However, it seems apparent that this provision implicitly incorporated the other condition attached to the gift of corpus to the issue of Eve, *viz.,* that Hallock must predecease Elizabeth.

Section H(3) opens with the clause "if there be no such lawful issue then surviving". This is an obvious reference to the time of termination set up by the preceding Section H(2), *viz.,* the death of Elizabeth, having been predeceased by Hallock and Eve. The next succeeding clause then proceeds to eliminate the death of Eve prior to that of Elizabeth as a condition precedent to the vesting of the ultimate gift of corpus, but it goes no further than that. Untouched is the condition that Hallock must have predeceased Elizabeth for the gift of corpus to Eve's issue ultimately to take effect. If this be the correct construction of Section H(3) then obviously the conditions laid down for the vesting of the gift of corpus to the issue of Eve cannot now be fulfilled because Hallock has survived Elizabeth, and Eve and Hallock are now the only persons having any interest in the trust —Eve a life interest in income, and Hallock a life interest in income and a reversionary interest in the corpus.

There is another provision in Section H(3) which strengthens the construction just set forth. The provision for the disposition of corpus in default of surviving issue of Eve directs the transfer of the corpus to those persons "as are entitled" to Hallock's residuary estate, or to such persons "as may be" his next of kin. The use of this language clearly indicates that it was contemplated that Hallock would be dead at the two alternative times for the transfer of the corpus. The first of these alteratives is the death of Elizabeth, having been predeceased by both Hallock and Eve, (the condition of Section H(2)), and the second of these is the death of Eve, having survived Elizabeth. What justification can there be for distorting the paragraph into requiring the death of Hallock prior to Elizabeth as to one of the alternatives, and not as to the second, particularly in view of the method of draftsmanship which on its face does nothing except to eliminate the death of Eve prior to Elizabeth as one of the conditions?

This construction of Section H makes it a consistent whole without omissions. It results in a consistent dispositive scheme for both income and corpus in the event of the remarriage of Elizabeth following her divorce from Hallock. If the only provisions of the instrument were those of Sections G and H there could be no doubt but that this is the proper meaning. But it is argued that Sections A through F, conditoned upon the non-remarriage of Elizabeth, compel a different result because of the supposed necessity to harmonize not only Sections G and H with themselves, but with Sections A through F as well. The argument is that the dispositive provisions conditioned upon remarriage or non-remarriage must parallel each other.

Generally speaking, it is true that the dispositive provisions conditioned upon the non-remarriage of Elizabeth parallel the comparable provisions conditioned upon the remarriage of Elizabeth, until the contingency of Eve surviving Elizabeth is reached. In the event of the remarriage of Elizabeth these provisions are found in Section H(3) ; in the event of the non-remarriage of Elizabeth they are found in Section F.

Section F contains one material and important difference from Section H(3). It provides, in the event Eve shall have predeceased

Elizabeth without leaving issue surviving, or if she shall survive Elizabeth but die without leaving lawful issue surviving, that then the corpus shall be transferred to Hallock "if he be then living", or if he is dead to his issue, or next of kin in default of issue. No such language appears in Section H(3). It thus appears that Section F contains a provision clearly contemplating the possibility that Hallock might survive Elizabeth, since express provision is made for a transfer to him, if living at the death of Eve, she having survived Elizabeth. The same is not true, however, with respect to Section H(3).

In view of this significant difference in language, it is to be asked how an argument of parallelism can justify writing into one the conditions of the other. Indeed, it might be suggested that the argument is double-edged. It could be urged to justify construing Section F to be parallel with Section H(3), particularly since that construction would be of the most benefit to Hallock, who at the time this agreement was prepared was not consulted about its terms, was denied access to anyone other than his mother, and whose sole act in connection with it was to sign it as an accomplished fact. His sole intention, if he can be said to have formed any intention, was to provide for the lifetime support of his estranged wife and two-year old daughter.

It is said that to make the gift of corpus to Eve's issue dependent upon the remarriage, or non-remarriage, of Elizabeth is unreasonable and capricious. This may be the fact, but is unreasonableness, or even capriciousness, in dispositive provisions of an *inter vivos* instrument sufficient ground for rewriting it to make it accord with the views of the Court as to what would have been a more reasonable dispositive scheme? As long as the provisions themselves do not run afoul of a prohibition of law or public policy, a settlor may be as capricious as his fancy or whim dictates. There can be no justification for a court, while purporting through construction to ascertain the meaning, in effect to rewrite it so as to make it, in its opinion, more reasonable and logical. What to the Court will appear reasonable might, and indeed probably would, appear wholly unreasonable to the settlor. Such action by the Court—that is, writing into a subsequent provision conditions not appearing therein because they appear in a prior provi-

sion conditioned upon an entirely different circumstance, is to speculate as to what was intended and is to incorporate into the rules of construction an uncertainty not formerly there.

I think the judgment below should have been reversed.