## CHATER *v.* CARTER, EXECUTOR OF HARTWELL.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
HAWAII.

No. 544.   Argued April 30, May 3, 1915.—Decided June 21, 1915.

A trust of certificates of stock to cause dividends thereon to be paid to a
designated party as beneficiary for a specified period and on the
expiration thereof to transfer the stock itself to the beneficiary if
living unless childless in which event the trustee was to hold the
stock and pay the dividends to the beneficiary during life and on
the death of the beneficiary to distribute to designated parties, *held,*
in this case, to have failed in case of the death of the beneficiary
within the period specified both as to the stock and the dividends and
that the trustee was bound to return the stock to the donor and that it
did not pass to the heirs or personal representative of the beneficiary.

In construing a declaration of trust, in this case in form of a letter and
phrased in simple language, the guiding principle is to seek the inten-
tion of the maker, as expressed in the instrument; and the court is
not called upon to strain the meaning of words, as is sometimes done
in the case of wills so as to avoid intestacy.

Where the death of the beneficiary defeats the trust and leaves the
trustee without directions or authority to transfer the fund to any
beneficiary, as he is *functus officio* and cannot in equity retain the
fund for himself, there is a resulting trust for the donor to whom
he must redeliver the fund.

22 Hawaii, 34, affirmed.

THIS is an appeal from a decree of the Supreme Court
of Hawaii (22 Hawaii, 34), affirming a decree of the Circuit
Court of the same Territory which dismissed a bill in
equity brought by Charles Hartwell Chater, a minor,
by his father, Charles H. Chater, as next friend and
guardian, in which the father joined as a complainant
in his own right and as Administrator of the estate of
his deceased wife, Charlotte Lee Hartwell Chater; the
defendants being Alfred W. Carter, as trustee of a trust

created by the late Alfred S. Hartwell, deceased, in his lifetime, Alfred W. Carter as the executor of the will of Alfred S. Hartwell, deceased, Mabel R. Hartwell, and the Hawaiian Sugar Company, a corporation organized and existing under the laws of the Territory of Hawaii. The object of the bill was to require an accounting and transfer of 585 shares of the capital stock of the Sugar Company and the dividends declared thereon since August, 1909, including 292½ shares of new stock issued as a dividend. The case was heard upon an agreed statement of facts in substance as follows:

"Alfred S. Hartwell died in Honolulu on the 30th day of August, 1912, leaving a will, duly proved in the Circuit Court of the First Circuit, Territory of Hawaii, on the 15th day of October, 1912. The defendant Alfred W. Carter was appointed executor in said will and qualified and is now acting as such. Charles A. Hartwell, also appointed, did not qualify. The deceased was from 1868 to 1874 a judge of the Supreme Court of Hawaii, from 1874 to 1904 one of the leading attorneys in Hawaii, and from 1904 to 1907 a judge, and from 1907 to 1911 chief justice of the Supreme Court of Hawaii. He was the father of seven daughters all of whom except Charlotte Lee Hartwell Chater now survive, to-wit, the five named in the instrument dated March 27, 1909, attached to the complaint herein marked 'Exhibit A,' namely: Charlotte Lee Hartwell Chater, Mabel R. Hartwell, Dorothy Hartwell, Bernice Hartwell and Juliette Hartwell, ('Lottie Lee,' named in said instrument Exhibit 'A,' being Charlotte Lee Hartwell Chater, and 'Mabel,' being Mabel R. Hartwell), and also Madeline Hartwell Judd and Edith Hartwell Carter, the latter being then and now the wife of Alfred W. Carter, defendant. Charlotte Lee Hartwell Chater had been married to the complainant, Charles H. Chater, shortly before the date of said instrument, to-wit, on July 15, 1908, and was then on March 27, 1909,

of the age of 32 years and without children. The daughters named in said instrument, other than said Charlotte and Mabel, were at that time unmarried. All the daughters were of age. Mabel had children, who still survive.

"Charlotte Lee Hartwell Chater died in Natick, in the County of Middlesex, Commonwealth of Massachusetts, where she had been residing with her husband, Charles H. Chater, on the 3rd day of September, 1909, in childbirth, intestate, leaving the complainants, her husband, Charles H. Chater, and one child, the complainant, Charles Hartwell Chater, who was born on August 30, 1909; thereafterwards, on the 15th day of November, 1909, the Probate Court of the County of Middlesex duly appointed the complainant, Charles H. Chater, administrator of the estate of said Charlotte Lee Hartwell Chater, and issued letters to him, and he duly qualified as such and is now acting; and said Probate Court, on the 17th day of December, 1909, duly appointed said Charles H. Chater guardian of the person and estate of the complainant, Charles Hartwell Chater, and issued letters of guardianship to said Charles H. Chater, who qualified and is now guardian of said Charles Hartwell Chater.

"The Hawaiian Sugar Company is and was at all times hereinafter named a corporation existing under the laws of the Territory of Hawaii, having its usual place of business in Honolulu, in said Territory.

"Said Alfred S. Hartwell, being a man of ample means and the owner of a large number of shares in the Hawaiian Sugar Company, on the 27th day of March, 1909, transferred to the name of Alfred W. Carter, as trustee for Charlotte Lee Hartwell Chater, 585 of such shares and caused a certificate to be issued to the said Alfred W. Carter as trustee for Charlotte Lee Hartwell Chater for said 585 shares, and delivered said certificate to said Al-

fred W. Carter, Trustee, and, at the same time, executed and delivered a declaration of trust, as follows:

"Honolulu, T. H., March 27, 1909.
"Mr. Alfred W. Carter, City.·

"DEAR ALFRED: I enclose certificate in your name as trustee for Juliette for 415 shares and another certificate in your name as trustee for Dorothy for 420 shares, another in your name as trustee for, Lottie Lee for 585 shares, also a certificate in Lottie Lee's name (being those which I gave her before she was married) for 250 shares, also three blank forms of receipts in duplicate for you to sign and hand to me, if you please.

"The trust for both Juliette and Dorothy is to see that the dividends are paid to them, or, what I presume would be better, placed to their credit with Bishop & Co. where each of them now has an account. If either of them should die before returning here her shares are to be divided between the two surviving unmarried girls; if neither of them returns both their shares to go to Bernice, if living, otherwise to all the surviving sisters· equally. I am aware that this is simply a temporary arrangement— I hope it is—and that either of them has a right to call upon you to make over the shares to her at any time.

"The trust for Lottie Lee is to cause the dividends to be paid to her during the three years from January 1st next and if she shall then be living to transfer the shares to her or hold them in trust for her benefit as she may in writing request, unless at the end of three years she shall have no child living, in which case the trustee is to hold the stock paying her the dividends during her life-. time, with power to change the investment and vary it at any time at discretion and at her death to divide the trust funds or securities equally among her sisters who shall then be living, and if none shall then be living among their children. then living, my object being, as

Mr. Chater will observe, that as to these additional 585 shares they shall remain in my family.

"I also enclose for you to retain for Mabel Certificate No. — in her name for 200 shares Hawaiian Sugar Stock.

"I have been arranging with the Brewers to draw my salary and to pay Lottie Lee and Mabel on the 15th of each month their dividends. I can continue to do this although it may be better for some reasons to arrange with Alexander & Baldwin to remit the dividends directly to them from New York, in which case there would be a charge of 20 ct. a hundred unless they shall accede to my request to make no charge for exchange.

"I also enclose certificate in Bernice's name for 420 shares which I am now giving her and also for 165 shares which I gave her recently. I do not know where the certificate for 250 shares which I formerly gave her is. I think it would be wise if the certificates of all the girls should be retained in your office and to have that understood by them.

"Very truly,<br>
"ALFRED S. HARTWELL.

"This declaration of trust is the aforesaid 'Exhibit A.'

"At the same time, similar certificates were issued and delivered to said Alfred W. Carter, as trustee for Juliette Hartwell and Dorothy Hartwell, for the shares mentioned in said declaration.

"On the same day Alfred S. Hartwell caused a certificate to be issued in the name of Charlotte Lee Hartwell Chater for the 250 shares referred to in the declaration of trust, which certificate was also handed to said Alfred W. Carter.

"Charlotte Lee Hartwell Chater was duly notified of these transactions, the information coming through a letter from Alfred S. Hartwell to Charles H. Chater on March 29, 1909, as follows:

"HONOLULU, T. H., March 29, 1909,
"Mr. Charles H. Chater, South Natick, Mass.

"MY DEAR MR. CHATER: I have not been a good Correspondent for I have had many cares and responsibilities resting upon me.

"I am simply writing to you now about a matter of Lottie Lee's which I do not wish to write to her under present conditions or to trouble her at all about it. It is this—before her marriage I had given her 250 shares of the Hawaiian Sugar Stock paying regularly a monthly dividend of $75. Since a sale was made last summer of my large holdings in the American Sugar Co. (Molokai ranch) I have paid off the heavy indebtedness which had been burdening me for several years and am now dividing the shares in the Hawaiian Sugar stock which formerly had been pledged for my indebtedness in such way as to give Lottie Lee 585 shares more, which I am placing with Alfred W. Carter in trust (as explained in my letter to him) 'to cause the dividends to be paid to her during the three years from January 1st next and if she shall then be living to transfer the shares to her or hold them in trust for her benefit as she may in writing request, unless at the end of the three years she shall have no child living, in which case the trustee to hold the stock paying her the dividends during her lifetime, with power to change the investment and vary it at any time at discretion and at her death to divide the trust funds or securities equally among her sisters who shall then be living, and if none shall then be living among their children then living, my object being, as Mr Chater will observe, that as to these additional 585 shares they shall remain in my family.'

"'I have been in the habit of arranging with Charles Brewer & Co. in Boston to collect my salary and pay Lottie Lee $200 a month on my account; I am now writing them to send her $250 instead on April 15, May 15, and

June 15. Alfred, as her trustee, will require receipts for the dividends on the 585 shares which he holds in trust, which will be $175.50 a month. I accordingly enclose receipts for Lottie Lee to sign and send to him.

"I will also cause the Brewers to continue to send the $75 a month for April, May and June dividends on the 250 shares, which I will collect here and have them pay on my account. One reason why I do not arrange for longer payment by them is that I am quite likely to go east in June—I hope to do so—and to see you all—and am aware of the uncertainties of life, you know. Alfred will arrange after that to send a bill of exchange to Lottie Lee monthly for the entire $250.50 coming to her, less exchange, which will be a small sum if he arranges to have the New York agents do this, which I think he will.

"It might also be well for Lottie Lee to give Alfred her proxy as to the 250 shares which I am turning over to him, a form for which I am enclosing herewith.

"I am making the same apportionment of my property between Madeline, Lottie Lee, Juliette, Bernice and Dorothy, future arrangements for the others to await contingencies, and I am in my will giving my homestead here to Juliette, Bernice and Dorothy, while there will always be a home where any of their sisters and their families will be welcome.

"I am much gratified to learn that you are going out to South Natick. I shall hope to be able to go out there this summer, in which case I may arrange to live in the old cottage (Aunt Martha's house) where my childhood and many of my later years were spent. I do not mean that I am not well assured of a welcome from you and Lottie Lee in the new Cottage, but by going into the old house I shall feel free, as you can see, to get a friend or two out there at any time when it will not interfere with Mabel and her family going there. At any rate I have not been there since my sister's death and that will be the place in

which I should like to stay, it now seems to me, when I am east in the summers.

"You will know best whether to trouble Lottie Lee just now to look this letter over. Do entirely as you think fit.

"Faithfully yours,

"(S'g'd) ALFRED S. HARTWELL.

"Alfred W. Carter endorsed and deposited the dividend warrants on said 585 shares for the months of April, May and June, 1909, in the bank to the credit of Alfred S. Hartwell, who subsequently paid the amounts of the dividends over to Charlotte Lee Hartwell Chater, who thereafter sent to said Alfred W. Carter receipts for the same, the receipt for the dividends for the month of April reading as follows, the receipts for the months of May and June being in the same form:

'BOSTON, MASS., April 15, 1909.

'Received of Alfred W. Carter, Trustee, per Charles Brewer & Co., one hundred seventy-five and 50/100 ($175.50) dollars, April dividends on 585 shares of Hawaiian Sugar Co. stock, held by him as my trustee.

'(Signed) CHARLOTTE L. H. CHATER.'

"Alfred W. Carter endorsed and deposited in the bank the dividend warrants on said shares for the months of July and August, 1909, and sent the amounts of the said dividends to Charlotte Lee Hartwell Chater.

"Alfred W. Carter endorsed and delivered the dividend warrants on said shares for September, 1909, and the following months to A. S. Hartwell, until the transfer of said shares to A. S. Hartwell.

"After the death of said Charlotte Lee Hartwell Chater the defendant Alfred W. Carter delivered to her said administrator said certificate for 250 shares, but without the knowledge or consent of the complainants, endorsed as trustee for Charlotte Lee Hartwell Chater, said certificate for 585 shares to said Alfred S. Hartwell, and a new certificate was on November 29, 1909, issued to said

Alfred S. Hartwell in his own name by the defendant the
Hawaiian Sugar Company. On the 18th day of May,
1910, said Alfred S. Hartwell transferred said certificate
for .585 shares to the defendant, Mabel R. Hartwell, and
the defendant Hawaiian Sugar Company issued a new
certificate on that date to said defendant, Mabel R.
Hartwell, in her name for 585 shares, she not knowing at
the time that the stock was the same stock which her
father had previously transferred to Alfred W. Carter,
Trustee for her sister, Charlotte Lee Hartwell Chater,
and having no knowledge of the terms of that trust but
receiving the same without consideration and as a gift
from her father and not on any secret trust or understand-
ing.

"It is conceded, if admissible, that the said transfer of
said stock by Alfred W. Carter to Alfred S. Hartwell was
made by said Alfred W. Carter in good faith and on de-
mand of said Alfred S. Hartwell and under the advice of
counsel sought and received by said Alfred W. Carter, and
that the said transfer of said stock by Alfred S. Hartwell
to Mabel R. Hartwell was made by said Alfred S. Hartwell
in good faith and under the advice of counsel sought and
obtained by him after the demand for said stock made on
him by said Charles H. Chater.

"On the 1st day of July, 1910, the Hawaiian Sugar
Company declared a stock dividend of 50 per cent., paid
the said Mabel R. Hartwell $20 for a fractional one-half
share, and on July 2nd issued to the said Mabel R. Hart-
well as said dividend 292 shares additional stock, which
were included in a new certificate for 1552 shares in
Mabel R. Hartwell's name, which 1552 shares are still
standing in her name."

It was further stipulated that cash dividends were paid
as they accrued to A. W. Carter, Trustee, from September,
1909, to January, 1910, to Alfred S. Hartwell from that
date until May, 1910, and thereafter until the commence-

ment of the suit to Mabel R. Hartwell, subsequent dividends having been retained by the company. The market value of the stock is likewise stated, showing that the sum in controversy exceeds the amount requisite for an appeal to this court. The following also appears:

"The estate of said Charlotte Lee Hartwell Chater is not indebted to any one; the known heirs are the complainants, Charles H. Chater and Charles Hartwell Chater; and the said Charles H. Chater consents that any interest which he may have in said stock or said dividends may be accounted for and paid to himself as guardian for said Charles Hartwell Chater."

*Mr. David L. Withington,* with whom *Mr. Joseph P. Bell* was on the brief, for appellants:

A present equitable title to the stock vested in Mrs. Chater, which has never been divested.

An equitable title passed to Mrs. Chater, subject to the trust.

The trust having expired by its own limitation, without divesting the beneficiary of her title, the legal title followed the equitable title to the beneficiary or her estate.

There is no resulting trust to the donor in the case of a gift to a child.

There was a vested future interest to Mrs. Chater, which did not lapse on her death. General rules of construction favor a vested gift in this case. The law favors a vested, rather than a contingent, interest. A gift of intervening income is evidence of a vested gift of the principal. Failure of donor to provide a gift over is evidence that the gift was not intended to be contingent. The fact that like gifts made at the same time were treated by donor as vested is evidence that Chater gift was vested. Language in a trust is to be construed most strongly against the donor, the party using same. The language of the transaction itself shows a vested gift. There is an implied gift to

Charles Hartwell Chater on the death of his mother before January 1, 1913. The exact language as to these dividends is one of an absolute vested gift. The general rules of construction favor a vested gift as to the dividends. The law favors a vested, rather than a contingent, gift. Where language sets out a complete gift the court will not override or cut it down unless the language contra is clear and unequivocal. The construction of the particular clause shows a vested gift. An annuity so passes. Gifts of income of real estate for years pass to the estate of the beneficiary. An interest in life insurance policy issued for the benefit of a person other than the insured, passes to the beneficiary's estate.

The defendants Mabel R. Hartwell, Alfred W. Carter, and Hawaiian Sugar Company are liable to the complainants.

Numerous authorities of this and other courts support these contentions.

*Mr. Robbins B. Anderson* for appellees.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

We have here a trust declared in writing by the late Judge Hartwell, of Hawaii, a man of ample means and of long experience as a practicing lawyer and judge, the father of seven daughters, four married, three unmarried, of whom five were named and in some way provided for in the trust instrument. The subject of the controversy is 585 shares of the stock of the Hawaiian Sugar Company, for which a certificate accompanied the trust instrument, the certificate being in the name of "Alfred W. Carter as Trustee for Charlotte Lee Hartwell Chater;" separate certificates being at the same time issued and delivered to Mr. Carter as trustee for Juliette Hartwell and Dorothy

Hartwell, respectively, and a certificate for 250 shares in the name of Charlotte Lee Hartwell Chater being also delivered to him.

The date of the trust instrument is March 27, 1909. The particular clause out of which the controversy arises reads as follows:

"The trust for Lottie Lee is to cause the dividends to be paid to her during the three years from January 1st next and if she shall then be living to transfer the shares to her or hold them in trust for her benefit as she may in writing request, unless at the end of the three years she shall have no child living, in which case the trustee is to hold the stock paying her the dividends during her lifetime, with power to change the investment and vary it at any time at discretion and at her death to divide the trust funds or securities equally among her sisters who shall then be living, and if none shall then be living among their children then living, my object being, as Mr. Chater will observe, that as to these additional 585 shares they shall remain in my family."

The substance of this was copied into Judge Hartwell's explanatory letter to his son-in law, Mr. Chater, dated two days after the trust instrument, and which all parties have treated as throwing a legitimate light upon the meaning of that instrument.

The trust for Mrs. Chater was evidently created in view of her approaching maternity, an event that occurred about four months before "January 1st, next," and was followed by her death on the 3d of September, 1909, leaving a son, who still survives. The question is, Who is entitled to the shares of stock and to the dividends accruing after January 1, 1910?

Appellants contend (1) that upon the establishment of the trust accompanied by the delivery to the trustee of the stock certificate naming her as beneficiary, an equitable title passed to Mrs. Chater subject only to

the trust, and that when the trust expired by its own limitations the legal title followed the equitable title and became vested in Mrs. Chater's estate; or (2) that there was a vested future interest in Mrs. Chater, which did not lapse upon her death; or (3) that even if the gift to Mrs. Chater was not vested there was an implied gift to her son upon her death prior to January 1, 1913. And, in any event, it is contended (4) that the gift of the dividends to Mrs. Chater for the period of three years from and after January 1, 1910, was absolute and passed to her estate.

Appellees contend, on the other hand, that by the terms and true meaning of the trust instrument there was no present gift to the beneficiary, expressed or implied, creating any interest, legal or equitable, but only a direction to the trustee to pay or transfer the subject of the trust to the beneficiary at a future time upon express condition that she were then living; that her death before the first of January, 1910, defeated the trust as to the dividends as well as the principal; and that since the trustee was thus left without directions or authority to transfer the stock or the dividends to any beneficiary, and could not hold them for himself, a resulting trust arose in favor of the donor.

The declaration of trust is in the form of a letter, and is clearly and simply phrased, without employment of technical terms. In seeking its true construction, little assistance can be had from technical rules. The guiding principle must be, to seek the intention of the settlor. We mean, of course, his intention as expressed. Not, What did he intend to say? but, What did he intend by what he did say? must be the test.

We cannot yield to the argument that because the stock certificate was caused to be issued in the name of Mr. Carter as trustee for Mrs. Chater there was a present transfer of the equitable title to her, subject only to the terms of the declaration. The mention of her name in

the certificate had its proper purpose in earmarking the stock and identifying the trust to which it pertained; but the terms of that trust must be found in the accompanying letter.

In construing it, we are not called upon to strain the meaning of words, as is sometimes done to avoid intestacy when wills are to be construed. Judge Hartwell evidently contemplated that Mrs. Chater was to become a mother, and he makes the ultimate disposition of the stock (if she survives) turn upon the question whether she shall have a child or children living at the end of the designated period of three years from January 1, 1910; yet he makes no provision for the child in the event of her death in the meantime. And even the payment of dividends to Mrs. Chater is postponed until January 1, 1910. We are left without explanation of this, unless it be attributable to a purpose that the inception of the trust should depend upon her surviving the perils of childbirth. We must therefore reject the theory that there was a vested future interest in Mrs. Chater or an implied gift to her child in the event of her death prior to January 1, 1913. As to the dividends, the gift of these must likewise be treated as contingent upon her surviving to receive them; for it was not even a gift in terms, but only a direction to pay them to her during the three years from January 1, 1910.

The main purpose, as expressed, was to hold the principal fund until January 1, 1913, when, if Mrs. Chater were living and had a living child or children, she should decide for herself whether to take the fund into her own hands or allow the trustee to continue to hold it for her benefit; but if she had no child living, the trustee was to hold the fund, giving her the income only, and at her death dividing the fund among her sisters, etc.,—"my object being, as Mr. Chater will observe, that as to these additional shares they shall remain in my family."

Mrs. Chater was the chief object of the bounty. What she was to receive, and when she was to receive it, were stated in plain terms.  Beyond this, we think there are none of the implications that are deemed to arise in cases of wills.

But the event that happened—her death before January 1, 1910—although evidently in contemplation as a possible event, was not provided for. What then happens? The trust has failed; the trustee is *functus officio;* he cannot in equity retain the fund for himself; he must simply redeliver it to him from whom it came. In other words, there is a resulting trust for the donor.

The entire matter is so fully and satisfactorily discussed in the opinion of the Supreme Court of Hawaii that we need not further elaborate it.

*Decree affirmed.*