Beecher PRIOR et al., Respondents,

v.

Estil Dean PRIOR et al., Defendants,

Rowena Hager et al., Appellants.

No. 51227.

Supreme Court of Missouri,

Division No. 1.

Nov. 8, 1965.

Joe Beavers, Larry L. Zahnd, Beavers & Zahnd, Maryville, for respondent, Arda Jean Merrill.

John E. Downs, Don Pierce, Downs & Pierce, St. Joseph, for respondent, Estil Dean Prior.

J. F. Allebach, Albany, for appellants.

WELBORN, Commissioner.

The primary object of this action is to quiet title to a 191-acre farm in Gentry County on the theory that the will of Henry W. B. Myrick, insofar as it purported to dispose of the farm, was void for violation of the rule against perpetuities. Partition was also sought. The trial court found the will void insofar as the disposition of the farm was concerned and quieted title accordingly, and ordered partition. This appeal followed.

On January 13, 1937, Henry W. B. Myrick, a minister of the Christian Church, 80 years of age, and his wife, Cynthia, executed as their joint will the following

document, prepared and written in long-hand by Mr. Myrick:

"We, Henry W. B. Myrick and Cynthia A. Myrick, his wife do make and declare this instrument of writing to be our last will and testament, hereby superceding and revoking any or all wills made by us, or either of us, prior to the date on which this is signed. And we will and appoint that upon the death of either of us the survivor shall act as administrator of the estate, to serve without giving bond.

"Section 1.

"We will our house and lots, all of Block 2, in Frisbie's addition to the town of Gentryville, Mo., to our daughter, Rowena Hager, to be hers absolutely.

"Section 2.

"We have a farm adjoining the town of Gentryville on the South side, described as follows:

[description omitted]

"Containing, More or Less
. . . 191 acres

"This farm is divided into two almost equal parts by a line fence running due North and South from the edge of Gentryville to Grand river on the South. At our death, both of us, this tract of farm land is to become the possession of our two daughters, Mrs. Sybil Prior and Mrs. Rowena Hager. Mrs. Prior is to have the West half of this land and Mrs. Hager the East half. Each of them, and her body heirs after her, is to retain use and possession of her portion of this land until both of our daughters, Sybil Prior and Rowena Hager shall have died. When both daughters have died then the land is to become the joint possession of the then living grandchildren of ours, the body heirs of the said Sybil Prior, Rowena Hager and of Zenobia Mowery, a daughter of ours who is now deceased. These grandchildren may divide it equally among themselves any way they choose. And further, it is provided that both daughters, Sybil and Rowena, are to have access to, and use of, any timber anywhere on said tract of land, for use as fuel, or building of cribs, etc.

"Section 3.

"We have some registered, tax exempt Treasury, Farm Loan and Postal Savings Bonds. We will that Eight (8) thousand dollars worth of those bonds, now in safe keeping with the Gentry County Bank, shall be kept there or elsewhere for safety, and as they come to maturity from time shall be reinvested in other government bonds or Postal saving securities. And we will that during the lives of our daughters, Sybil and Rowena, the interest from these bonds shall be used to pay the taxes upon the farm described in Section 2 of this will, and also to pay the taxes and fire insurance on the two homes of our daughters, Sybil and Rowena, located in Gentryville, Mo. And if in any year the interest received from the bonds is not enough to pay these taxes, then the daughters may draw upon the principal to cover the lack. And any year when the interest on the bonds is *more* than enough to pay the taxes and insurance, let the daughters, Sybil and Rowena, divide the surplus equally between themselves. And, when these two daughters can agree to buy a tractor, or any other farm tool which they can use in cooperation, let them do it, or use some of the bond money to keep up division fences, etc. And when they have both died, if any of this $8,000 bond money fund remains let it be divided equally to our then living grandchildren. Provided, further: That these two daughters, by agreement, and in equal amounts, may use of this money to repair houses, or other necessary uses.

"Section 4.

"When we, Henry W. B. Myrick and Cynthia A. Myrick die, we direct that a bond, Land or Federal, amount One (1) thousand dollars, now kept by Gentry County Bank with the others described in Sec-

tion 3, shall be sold and divided to our grandchildren, the heirs of our deceased daughter, Zenobia Mowery, in amounts as follows: to Pearl, $5.00: to Vivian, $195.-00: to Dolly, $800.00 for her and her brother Wardie. And if Pearl be dead, her share ($5.00) go to Vivian, and if Vivian be dead, the whole $1,000 shall go to Dolly, for her and her brother Wardie, who is her care.

## "Section 5.

"As long as we both live, or the survivor, we will use and supervise the real and personal property herein described, and when both of us have died our two daughters, or the survivor, shall be the administrators of this estate, and if they fail to agree about anything they may call some third person to act with them and decide the point. Or they may ask the Public Administrator to take charge of the estate. And these two daughters, Sybil Prior and Rowena Hager, shall serve without giving bond."

Mr. Myrick died on February 12, 1937, and on March 1, 1937, the foregoing document was admitted to probate in the Gentry County Probate Court. Title to the farm in question was in Mr. Myrick alone. His widow died in 1952. Mr. Myrick was survived by two daughters, Sybil Prior and Rowena Hager. He was also survived by ten grandchildren, one the son of Sybil Prior, five the children of Rowena Hager and four the children of Zenobia Mowery.

Following the death of Mr. Myrick, Sybil Prior took possession of the west half of the farm and Rowena Hager of the east half. Sybil Prior died on March 17, 1963, leaving a son, Beecher Prior, surviving. (Beecher Prior, by a separate count of the petition in this case, sought to recover possession of the west half of the farm in the event that the will was held valid. The trial court, in view of its findings, concluded that this count was "moot.") Arta Jean Prior Merrill and Estil Dean Prior, children of Beecher, were the residuary devisees and legatees under the will of Sybil Prior.

Arta Jean Prior Merrill, by her petition filed November 29, 1963, sought to quiet title in herself to an undivided ⅙ interest in the 191-acre farm, on the theory that the provision of Mr. Myrick's will, purporting to dispose of it, violated the rule against perpetuities; that, consequently, as to the farm, Mr. Myrick died intestate, and that, upon his death, his daughter Sybil Prior, became vested with fee simple title to a ⅓ interest in the farm, which, by Sybil's will, passed to Arta Jean and her sister Estil Dean in equal shares.

Named as defendants in the action were Estil Dean Prior, Rowena Hager, who was still living and her five children, and the four children of Zenobia Myrick Mowery and their unknown heirs, etc.

Estil Dean Prior filed answer, joining in the prayer for relief sought by plaintiff. Rowena Hager and three of her children, by their joint answer, denied plaintiff's claim and asserted the validity of the will, alleging that its meaning, gathered from its four corners, was that Sybil Prior was to have a life estate in the west half continuing in the bodily heirs of Sybil as long as Rowena Hager might live following the death of Sybil, and Rowena was to have a life estate in the east half, with fee simple title fully vesting, share and share alike in the bodily heirs of testator's children living at the moment of the death of the last daughter of testator, and that so construed the will required vesting within the limits prescribed by the rule against perpetuities.

The trial court found the issues in favor of plaintiff and entered judgment quieting title in Rowena Hager as to an undivided ⅓ interest, in four grandchildren of Zenobia as to a 1/12 interest each and in Arta Jean and Estil Dean, granddaughters of Sybil Prior, as to a ⅙ interest each. A judgment of partition was also entered. Rowena Hager and three of her children appeal from the judgment so entered.

On this appeal, appellants contend that the will, properly construed, devised an absolute interest in the farm to the grand-

children of testator living at the time of the death of the last survivor of his two daughters and that the interest of the grandchildren was certain to vest within the limits of the rule against perpetuities. Respondents, on the other hand, contend that the will gave the grandchildren only life estates, with either an implied remainder in fee in the heirs of testator's "then living grandchildren," or devolution of the fee by intestate succession at the termination of the life estates, and that under either of such alternatives the fee might not vest within the limits of the rule against perpetuities.

We approach the question here presented under the statutory injunction that we have a due regard to "the directions of the will, and the true intent and meaning of the testator * * *." Section 474.430, RSMo 1959, V.A.M.S. In order to arrive at such intent, our primary guide is the will itself, considered in its entirety or, as frequently stated, "its four corners." Gehring v. Henry, Mo.Sup., 332 S.W.2d 873, 876 [2–4]; English v. Ragsdale, 347 Mo. 431, 147 S.W.2d 653. In the event of ambiguity in the instrument itself, there are certain auxiliary rules of construction which are applied in order to resolve the ambiguity in the light of the testator's intention. Walters v. Sisler, Mo.Sup., 371 S.W.2d 187. One such rule, sometimes referred to as a "presumption," gives preference to a construction which will prevent partial intestacy, rather than one which will permit it, if such construction may reasonably be given. Gehring v. Henry, supra, 332 S.W.2d 878 [11]; Shaw v. Wertz, Mo. Sup., 369 S.W.2d 215, 218 [8–11]; In Re Garrison's Estate, Mo.Sup., 374 S.W.2d 92, 94 [1, 2]. That rule is strongly relied upon by appellants who urge that Mr. Myrick, having undertaken the "solemn act of writing his last will and testament" clearly "attempted to dispose of all of his property" and that, as to the farm, his intention was to dispose of it completely by vesting fee title in his grandchildren living after his daughters' life estates had run their courses.

As is often the situation in matters such as this, respondents would apply the same rule, but with a different result—an implied remainder in fee to the heirs of the "then living grandchildren" of Mr. Myrick. In contending that the language of the will affords no basis for the construction espoused by appellant, respondents would charge the testator with knowledge of the legal consequences of the language used by him. Gehring v. Henry, supra, 332 S.W. 2d 876 [2–4]. They contrast the provisions of Section 1 of the will, where the house and lots in Gentryville were devised to Rowena "to be hers absolutely" with the language of Section 2 where the testator spoke of "possession" with reference to the farm as evidencing that the testator was aware of the distinction between a fee simple and a life estate. They also point out that in Section 2, the word "possession" was employed to confer what was obviously a life estate on the daughters and conclude that when the testator employed the same word with respect to the interest of the grandchildren, he must have intended that the word have the same meaning and effect in limiting the latter's interest. English v. Ragsdale, supra, 147 S.W.2d 653 [7].

The language of the will is such that resort to the circumstances surrounding the testator at the time of its execution may be looked to in order to obtain assistance in arriving at the correct meaning of the language which the testator employed. In Re Fowler's Estate, Mo.Sup., 338 S.W.2d 44, 48 [2]. The circumstances of his advanced age and the status of his family would lend support to the conclusion that the testator intended to make an absolute disposition of his estate. Mr. Myrick had ten grandchildren living at the time of the execution of his will. Five of them, described as "small children" were children of Rowena Hager, who lived with her father during a large portion of the time after she was married in 1919 and until her father's death in 1937, although she was living elsewhere at the time of his death. Mrs. Prior, the other living daughter, lived next door. Mr. Hag-

er had started farming the east half of the farm in 1919 and Mr. Prior had been farming a portion of it prior to that time. In 1920, the division fences, referred to in the will, were erected and the Hagers continued to farm the east half and the Priors the west half and were doing so at the time of the execution of the will and of the testator's death.

With numerous small grandchildren close at hand, it does not appear reasonable to assume that Mr. Myrick's thoughts at the time of the execution of his will were directed toward great-grandchildren. The will discloses an obvious intention on the part of the testator to provide, insofar as possible, for his daughters during their lifetimes and thereafter to benefit the testator's grandchildren. Such was clearly the disposition of the bonds. If he had any great-grandchildren at the time that the will was executed, it does not appear. Certainly his will in no manner takes cognizance of them by any language employed by the testator. In our opinion, we should not, by implication, find such an interest attempted to be conferred upon them as would violate the rule against perpetuities, if an alternative plausible nonviolative construction is authorized. Nelson v. Mercantile Trust Co., Mo.Sup., 335 S.W.2d 167, 173 [8, 9].

We do not consider, as respondents suggest, that the absence of a residuary clause in the will evidences, as an alternative construction advanced by respondents, that Mr. Myrick actually intended to die intestate as to the farm upon termination of the second life estates in his grandchildren. The lack of such a clause is entirely consistent with an intention to dispose of the farm completely and a belief that such had been done.

We recognize that partial intestacy must be accepted notwithstanding a testator's avowed intention not to die intestate, where the language of the will plainly and unequivocally results in partial intestacy. In such case the court cannot give the testator's intention a different meaning, "for the purpose of carrying into effect a conjecture or hypothesis of the testator's intention, by supplying, rejecting, or transposing words or phrases." Crowson v. Crowson, 323 Mo. 633, 19 S.W.2d 634, 637; Lang v. Estorge, Mo., 242 S.W.2d 50, 53 [3, 4]. Although we might agree with respondents that the term "possession" would be more appropriately applied to a life estate, as was the case with the daughters, the fact that such term was also applied with respect to the grandchildren's interest does not produce a similarly limited estate in them. The rule that the same or similar language must be accorded the same meaning throughout the will is again only an auxiliary rule of construction, which must yield to an otherwise manifest intention of the testator. Tapley v. Dill, 358 Mo. 824, 217 S.W.2d 369, 374 [10]; Commerce Trust Co. v. Weed, Mo.Sup., 318 S.W.2d 289, 294 [1, 2].

According to our statute, Section 474.-480, RSMo 1959, V.A.M.S., technical words of inheritance are not required in order to devise an absolute estate. There is no positive rule of law which prevents or prohibits a testator from transferring an absolute estate by the use of the language here in question, if such was the expressed or ascertainable intent of the testator.

We do not consider that the difference between the language of Section 1 and Section 2 of the will discloses an intention on the part of the testator to make less than an ultimate disposition of the farm. As stated, Mr. Myrick, a minister, drew the will himself. Its language does indicate that he possibly had some little familiarity with technical legal terms. However, he was obviously not a skilled draftsman of wills. His ineptness produced the present ambiguity. Although the testator would be charged with the legal consequences of the choice of language of clear and definite meaning, the language employed in Section 2 is not of such clear and definite import as to pro-

duce necessarily the consequences urged by respondents.

■ We are of the opinion that the intention of the testator, determined from the will as a whole and in the light of the surrounding circumstances was to make his grandchildren living at the time of the death of his last surviving daughter the absolute owners of the farm. To give effect to such intention would violate no express rule of law insofar as the adequacy of the language employed in the will for such purpose is concerned and, therefore, we conclude that such is the meaning of Section 2 of the will.

■ Respondents argue that, even if Section 2 be so construed, it would violate the rule against perpetuities because the fee would not vest in the grandchildren until they met and agreed upon a division of the property as authorized by the will. We cannot accept this contention. The will provided that the farm should become the "joint possession" of the grandchildren upon termination of the preceding life estates. This would negative any idea that actual vesting of title would be suspended, pending division of the property as authorized by the will. The authorization for division is surplusage and has no legal effect insofar as the time of vesting of the fee simple title is concerned. Such conclusion is in accordance with the rule of construction in favor of vesting of estates at the earliest possible time. Commerce Trust Co. v. Weed, supra.

Respondents also argue that, even if "a fee interest in the land is vested in the then living grandchildren of H. W. B. Myrick upon the death of his last surviving daughter * * *, this fee must necessarily be what is known as a fee tail or an estate entail along the lines of Shepperd v. Fisher [206 Mo. 208, 103 S.W. 989] * * *"; that, by Section 442.470, RSMo 1959, V.A. M.S., the fee tail becomes a life estate in the "then living grandchildren" as first takers, with the fee upon their death in

their living body heirs; that such a limitation violates the rule against perpetuities.

■ We reject this contention for the reason that the devise to the grandchildren is not such as would have created an estate tail at common law, and, therefore, § 442.-470 has no application. The will does not provide that upon the death of the last surviving daughter the farm shall go to the grandchildren *and* their bodily heirs. Instead it provides that the farm shall be the possession of the "then living grandchildren of ours, the body heirs of the said Sybil Prior, Rowena Hager and of Zenobia Mowery * * *." This language is merely descriptive of the grandchildren who were to be takers under the will and does not show "an intention to create an estate of inheritance descendible only to lineal heirs." 96 C.J.S. Wills § 862, p. 291.

In our opinion, the proper construction of the will in question, insofar as the property described in Section 2 thereof is concerned, is that a life estate in the west half thereof was devised to the testator's daughter, Sybil Prior, and in the east half to his daughter, Rowena Hager, with a right in the bodily heirs of the life tenant first dying to continue in possession of the deceased daughter's half of the farm until the death of the testator's last surviving daughter, at which time fee simple title vests in the grandchildren of the testator then living.

Arta Jean Prior Merrill sought partition in the action and partition was ordered on the theory that she was the owner of a 1/6 interest in the farm in fee simple. Under our conclusion, she has no present interest in the land in question which would authorize her to sue for partition against the surviving life tenant and the contingent remaindermen. Noyes v. Stewart, 361 Mo. 475, 235 S.W.2d 333. Therefore, the judgment of partition must be reversed.

Accordingly, the judgment of the trial court on Count One, quieting title, is reversed and the cause remanded for entry

of a new judgment quieting title in conformity herewith. The judgment as to Count Two, partition, is reversed and the cause remanded with directions to enter judgment, dismissing Count Two of the petition.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.