STORCKMAN, J., absent.

**ST. LOUIS UNION TRUST COMPANY, a Corporation as Trustee of the Residuary Estate Created by the Will of Laura Watters Kirsch, Respondent,**

v.

**BETHESDA GENERAL HOSPITAL (Also Known as the Governing Board of Bethesda General Hospital), a Corporation, Ethel Neal (individually and as class representative), Richard J. Watters (individually and as class representative), Laura Cutler Fortner, Helene Fish Wallace, and the unknown heirs, grantees and successors of Laura Watters Kirsch, Deceased, Appellants.**

No. 54161.

Supreme Court of Missouri, Division No. 2.

Nov. 10, 1969.

Shepley, Kroeger & Hecker, Harry W. Kroeger, and Arthur B. Shepley, Jr., St. Louis, for plaintiff-respondent.

Barksdale, Abbott, Adams & Wallace, Clarence M. Barksdale, Clayton, for appellant, Bethesda General Hospital.

Lon Hocker, St. Louis, for Unknown Heirs.

Hocker, Goodwin & MacGreevy, St. Louis, of counsel.

LAURANCE M. HYDE, Special Commissioner.

Action by trustee of a trust estate, created by the Will of Mrs. Laura Watters Kirsch, to construe its trust provisions. The corpus eventually goes to defendant Bethesda General Hospital. The issue here is the disposition of the trust income in excess of the amount required to pay designated annuitants, trustee's fees and administration expenses. The trial court found this excess income became part of the corpus and that this income should be added thereto until the death of the last of the annuitants, when the trust terminated. Appeals were taken by the residuary beneficiary Bethesda and by the representative of the unknown heirs of the testatrix.

Bethesda claims to be entitled to the excess income as it accrued. For the unknown heirs it is contended the testatrix died intestate as to the excess income. We do not accept either claim or all of the trial court's decree.

The part of the Will involved is as follows:

"ARTICLE V: All the rest, residue and remainder of the property which I may own or possess at the time of my death, both real and personal, and of every kind and description, wherever the same may be situated, I give, bequeath and devise unto the St. Louis Union Trust Company, its successors and assigns, located in the City of St. Louis, Missouri, to have and hold the same in trust as Trustee for the uses and purposes, and with the powers and duties following, that is to say.

"The Trustee shall receive, hold and manage the property constituting the Trust Estate, and shall keep the same at all times invested in such stocks, both common and preferred, bonds and other property, real or personal, as the Trustee may deem safe and desirable, and shall make reinvestments and changes of investment thereof from time to time, and shall collect the income therefrom, with full power in the Trustee to sell, exchange, assign, transfer, lease (for terms extending beyond the termination of the trust, or otherwise), pledge, mortgage or otherwise dispose of all or any portion of the trust estate, in such manner and upon such terms as the Trustee may deem most beneficial to the trust estate, including the right in the Trustee to give options for the sale of the property belonging to the trust estate, it being my desire that the selection of the character of securities for the investment of the trust funds is to be in the absolute discretion of the said Trustee; the Trustee shall have full power to determine

whether any money or other property coming into its hands, concerning which there may be any doubt, shall be considered as a part of the principal or income of the trust estate, and to apportion between such principal and income any loss or expenditure in connection with the trust estate as to it may seem just and equitable; the Trustee shall have further power to continue to hold any stocks, securities or other property which it may receive hereunder, as long as it may consider the same desirable investments, regardless of whether such stocks, securities or other property are in law proper investments for trust funds; and the Trustee may invest any part of the trust funds in property located outside of the State of Missouri, or in the obligations of nonresidents of said State; and every action taken by the Trustee pursuant to the foregoing powers, or any decision made by the Trustee in the exercise of the discretion herein given to it, shall be conclusive and binding upon all persons concerned therein.

"After paying the necessary expenses incurred in the management and investment of the trust estate, including the compensation of the Trustee for its own services, the Trustee shall make the following monthly payments:

"The first payment to accrue on the first day of the month after the date of my death, and a like payment on the first day of each month thereafter so long as the following named persons shall live. * * * [Names of annuitants and amounts to be paid monthly to each omitted] * * *.

"The trust estate hereinabove created shall cease and terminate upon the death of the last survivor of the above named persons who may be receiving monthly payments, and all of the assets then constituting the trust estate shall be assigned, transferred and delivered, free from trust, to the Governing Board of the Bethesda General Hospital now conducting the Bethesda Dilworth Home located in the County of St. Louis, Missouri, to be applied on the erection of a building to be used in connection with said home for elderly couples, elderly men and women; and the said building shall be dedicated to the memory of my father, my mother, my husband and myself, and said building shall be known as 'THE WATTERS KIRSCH MEMORIAL.'

"Any funds not needed for the construction of said building shall be held as an endowment fund for the maintenance and upkeep of said home."

The assets of the trust received by the trustee from the executors amounted to $2,935,370.19 and at the time of the trial were worth $4,104,000.00. The annual net income by 1966 was estimated as $153,000.00, while the total of the annual payments to the five annuitants was only $4,200.00. The youngest annuitant had a life expectancy of 24 years and it was estimated that, without consideration of gains or losses, the trust estate then would be worth $9,900,000.00

Bethesda contends the Will construed from its four corners with the evidence admitted, and also evidence excluded which it claims was admissible, discloses the intent of the testatrix to have the excess income distributed to it as it accrued. Under the provisions of Rule 73.01(d), V.A.M.R. we may consider any evidence rejected by the trial court we believe to be admissible and will do so in this case. Bethesda's argument for construction to require distribution of income to it is that Mrs. Kirsch intended that she and her family (parents; she had no children) be remembered and memorialized from the time of her death rather than postponing the memorial to the future; that this is shown by all the surrounding circumstances including her directions for burial in her family private room in a mausoleum with a trust fund of $20,000.00 provided for furnishing fresh flowers weekly; and her detailed provisions for maintenance of her home, with salaries to employees, until disposition of the contents. Testatrix left personal items, clothing, jewelry, automobiles, pictures, silverware and furniture, described in detail, to

named friends, employees and relatives. It was shown that testatrix and her parents had great interest in Bethesda; that testatrix's mother was organizer of Bethesda Northside Circle, a group of women doing things for Bethesda; and that testatrix continued as a member and also frequently made gifts to Bethesda.

The excluded evidence included pictures of the Bethesda Hospital and a home it operated; plans prepared by an architect (after testatrix's death) to show what a building for the purpose described in the Will would have cost at the time she executed the Will; testimony of an associate director of the Metropolitan St. Louis Hospital Planning Commission concerning the need for the kind of institution provided for in the Will; photographs of the mausoleum and private room maintained by the trust fund in the Will; and an audit of the operations of Bethesda's institutions showing they operate at a loss. Bethesda claims all this evidence was admissible and we consider it as showing testatrix's reasons for designating it as residuary beneficiary. As to the construction of the Will, Bethesda cites Ussher v. Mercantile Trust Co., Mo.Sup., 328 S.W.2d 699, 702, as follows: " ' "The controlling rule in construing wills in this state, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed." ' " On these general rules of construction, Bethesda also cites Burrier v. Jones, 338 Mo. 679, 92 S.W.2d 885, 887; McMahan v. Hubbard, 217 Mo. 624, 118 S.W. 481; Box-

ley v. Easter, Mo.Sup., 319 S.W.2d 628, 632; Lehmann v. Janes, Mo.Sup., 409 S.W. 2d 647, 653; and § 474.430, RSMo 1959 V.A.M.S. However, Bethesda does not designate specifically any words to be supplied or omitted or sentences to be transposed which would make the Will mean that the trust income should be distributed to it before the trust terminates. Instead it relies on the claim that all the surrounding circumstances disclose an intent of testatrix to have excess income distributed to it as it accrues. It cites Cockrell v. First Nat. Bank of Kansas City, 357 Mo. 894, 211 S.W.2d 475, but the will therein involved contained conflicting provisions as to payment of excess income to named annuitants, one indicating the payments were to be made after the death or remarriage of the testator's widow but the other stating (211 S.W.2d, l. c. 477): "I direct that the payments from net income derived from the Trust Estate be paid to the beneficiary or beneficiaries beginning from the date of my death." Because of this and other provisions inconsistent with delay of payments until after the widow's death or remarriage we held the payments to the annuitants were to be made from the time of the testator's death. There are no such inconsistent provisions in this Will.

Bethesda also relies on First Nat. Bank of Kansas City v. Stevenson, Mo.Sup., 293 S.W.2d 362. In that case the testator left amounts totaling less than $15,000.00 to designated persons (appraised value of estate $142,000.00). There was no payment of income to them involved and the will provided the bequests became void as to any of the beneficiaries who did not survive the testator. The will created a trust of the residue from which $300.00 per month was to be paid to a church for certain designated purposes. The trust income was more than twice that amount. The church claimed it should receive all the income but relatives of the testator claimed intestacy as to excess corpus (not needed to produce $300.00 per month and income above that amount) and asked that it be distributed to them. How-

ever, there were provisions of the will in favor of other religious organizations in case of certain contingencies stated. We held there was no intestacy as to any part of the estate; that testator did not intend any heirs should receive anything but the specific amounts given to those designated in the will; and that the entire income should be paid to the church as long as it was not disqualified under the contingent provisions. We said the designated amounts were not intended as a positive limitation and noted that the designated amounts were to be paid to the church from corpus if the income was insufficient. We further said the designation of amounts for specified items "is not inconsistent with the apparent general intent that all of the trust assets were placed in trust for the benefit of the primary and contingent beneficiaries." Moreover, the interest of the principal beneficiary was not postponed to the termination of the trust as in this case. We also noted that the cy pres doctrine might be applicable in a proper action required by changing circumstances. Considering all the surrounding circumstances shown we cannot find any reasonable basis for the construction claimed by Bethesda and affirm the ruling in the trial court's decree finding that there was "no direction for the periodic payment to * * * Bethesda * * * of the income in excess of the monthly payments directed to be made to the annuitants."

For the unknown heirs, it is claimed the testatrix by her Will did not dispose of the excess income of the trust over the amounts required for expenses and for payment of the life annuities, citing Chater v. Carter, 238 U.S. 572, 584, 35 S.Ct. 859, 863, 59 L.Ed. 1462, 1470, cited in Allen v. Globe-Democrat Pub. Co., Mo.Sup., 368 S.W.2d 460, 466, for the rule thus stated: "Not, What did he intend to say? but, What did he intend by what he did say? must be the test." It is claimed the excess income must go as provided in § 474.030, RSMo 1959, V.A.M.S., saying: "If part but not all of the estate of a decedent is validly disposed of by will, the part not disposed of by will shall be distributed as provided herein for intestate estates." It is argued the testatrix simply did not think about the excess income and did not express any intention concerning it; and that "the absence of such an expression is the operative criterion of the partial intestacy statute." It is also said: "there is no provision in the will: 1. for the periodical disbursement of the excess income, 2. for the retention of the excess income, 3. for the investment of the excess income, or 4. for the ultimate distribution of the excess income"; and further: "the trial court's conclusion as to Mrs. Kirsch's intent requires that we believe she intended that income in the amount of more than twice again the value of the estate be withheld *from anybody's use* for a quarter of a century or so." There was testimony that testatrix kept records of her investments and accounts, signed income tax returns prepared by a lawyer and checks for taxes due, and reinvested her excess income, Prior v. Prior, Mo.Sup., 395 S.W.2d 438, 443, is cited, where we said: "We recognize that partial intestacy must be accepted notwithstanding a testator's avowed intention not to die intestate, where the language of the will plainly and unequivocally results in partial intestacy." Nevertheless this court found against partial intestacy in that case. On this issue, also cited are such cases as Hartford-Connecticut Trust Co. v. Hartford Hospital, 141 Conn. 163, 104 A.2d 356, 360; Equitable Trust Co. v. Johnson, 28 Del.Ch. 45, 36 A.2d 257, 260; Glaser v. Chicago Title & Trust Co., 393 Ill. 447, 66 N.E.2d 410, 417; Carpenter v. Smith, 79 R.I. 326, 89 A.2d 168, 175; In re Lindsay's Estate, 260 Wis. 19, 49 N.W.2d 736, 738. These involve different will provisions and different factual situations.

■ However, where a will has been executed there is a presumption against partial intestacy which is particularly strong where the subject of the gift is the residuary estate. 57 Am.Jur. 756, Wills § 1158; 95 C.J.S. Wills § 615, pp. 828–839; Page on Wills, Bowe-Parker Revision § 30.14; see

also Prior v. Prior, with cases cited 395 S.W.2d 1. c. 442; and Riesmeyer v. St. Louis Union Trust Co., Mo.Sup., 180 S.W. 2d 60. We note that Article V in this Will is almost exactly the same as the residuary clause of a previous will of testatrix, made two years earlier. Construing all the provisions of Article V of this Will together, considering the surrounding circumstances and that it was the residuary clause of the Will, it seems reasonable to conclude that it was intended to dispose of everything not disposed of in the other articles including the excess income. Some states have a public policy against accumulation of income expressed in statutes. 1 Scott on Trusts, 3rd Ed., pp. 619–620, § 62.11. Cases from some of those states are cited in support of the contentions made for the unknown heirs. Missouri has no statute of this kind. All the surrounding circumstances considered with the provisions of Article V do indicate testatrix did intend that everything not specifically disposed of should go to Bethesda including the excess income. Furthermore, there is a reference to income in Article VII which provides: "no beneficiary shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in the trust estate or *the income* produced thereby." Article V devises in trust all the rest of testatrix's property "of every kind and description" and provides the trustee shall "hold and manage" the trust property; "shall keep the same at all times invested"; *"shall collect the income therefrom";* "shall have full power to determine whether any money * * * shall be considered as a part of the principal or income of the trust estate, and to apportion between such principal and income any loss or expenditure." Article V finally provides on the death of the last survivor of the annuitants *"all of the assets then constituting the trust* estate shall be * * * delivered * * * to the Governing Board of the Bethesda General Hospital"; and "any funds not needed" for construction of the building provided for "shall be held as an endowment fund for the maintenance and upkeep of the home." (Emphasis ours.)

 It is recognized in American Law Institute Restatement of Property § 439(b) that an intent to accumulate income may be inferred. See comment c, page 2563. While the Restatement shows there is a construction preference for no accumulation, § 440, we consider this should be applied more strictly to noncharitable trusts than to charitable trusts. This for the reason "an accumulation in favor of a charity is subject to judicial supervision as to its duration." Restatement of Property, § 442. As to the scope of judicial supervision see comment d, page 2588, saying: "When the facts affirmatively show a strong social interest in the termination of the accumulation the judicial desire to effectuate the giver's manifested intent must yield." See also Restatement of Trusts 2d § 401, comment k, page 316, saying: "If the court decides that under all the circumstances the period of accumulation is unreasonably long, it will direct that the property be applied to the designated charitable purpose either immediately or at a time to be fixed by the court, and, if necessary, will apply the doctrine of cy pres in order to carry out the settlor's general charitable intention." See also Bogert, Trust and Trustees, 2d Ed., § 352, page 774, citing St. Paul's Church v. Attorney General, 164 Mass. 188, 41 N.E. 231, 237, saying: "[T]he proper course is to hold that the limits of an accumulation for the benefit of a charity are subject to the order of a court of equity. By this method of solving the difficulty, on the one hand an unreasonable and unnecessary trust for accumulation can be restrained, and on the other hand a reasonable accumulation can be allowed to carry out the intention of the benefactor and to secure the accomplishment of the trust in the best manner."

 Our conclusions are that testatrix herein did not die intestate as to the excess income or any property; that the trust created by testatrix's will does not terminate

 

as to either corpus or income until the death of the last survivor of the annuitants; that the income of the trust in excess of the amounts necessary to pay the annuities provided and the expenses of the trust becomes assets of the trust to be added to the corpus and invested as part of the corpus; and in all these respects the decree of the trial court is affirmed. However, as we have indicated this matter involving a charitable trust is before a court of equity which has jurisdiction over it. "This Court has frequently held, when there is evidence tending to show plaintiff has rights growing out of the transaction involved, but has misconceived the remedy, an appellate court 'has discretion in the matter, and may remand the cause to permit the petition to be amended, and a retrial of the cause.'" Jensen v. Wilson Township, Gentry County, 346 Mo. 1199, 145 S.W.2d 372, 375 and cases cited. In Mann v. Bank of Greenfield, 323 Mo. 1000, 20 S.W.2d 502, 507, we remanded to permit plaintiff to amend from a claim of damages at law to equitable relief of impressing a trust on funds. In Feigenspan v. Pence, 350 Mo. 821, 168 S.W. 2d 1074, amendment was permitted to obtain a money judgment when plaintiff failed to make a case for specific performance. See also Nelson v. Grice, Mo.Sup., 411 S.W.2d 117, 126. It appears that applicable circumstances might be shown under which the period of accumulation of income of this trust could be too long; and that the matter of directing its earlier use to carry out the testatrix's charitable intention should be considered. In a hearing on this issue the attorney general, who has a duty to see that a charitable trust is properly administered, should be brought in as a party. See Scott on Trusts 3017, § 393.

The judgment and decree is affirmed as to the rulings hereinabove approved but is reversed as to the absolute denial of the use of any of the excess income prior to the termination of the trust and remanded with directions to allow Bethesda to amend its pleadings if it be so advised and if it does so to consider use of the excess income of the trust in further proceedings in accordance with the views herein expressed.

## PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.